## UNITED STATES v. WARREN.

### No. 273.

Circuit Court of Appeals, Second Circuit.

June 4, 1941.

212

Before L. HAND, CHASE, and FRANK, Circuit Judges.

Charles T. Murphy, of White Plains, N. Y., for appellant.

Mathias F. Correa, U. S. Atty., of New York City (Abel I. Smith, Jr., and William F. Young, Asst. U. S. Attys., both of New York City, of counsel), for appellee.

L. HAND, Circuit Judge.

Warren, the accused, a deputy collector of taxes, was convicted of accepting money from a taxpayer, one Milohnic, in compromise of Milohnic's violation of the income tax law. The supposed errors relied upon are (1) that the judge denied the accused a fair trial; (2) certain rulings upon the admission and rejection of evidence; (3) that the accused's counsel was unfairly limited in examining witnesses and in addressing the jury. From the evidence the jury might have found the following facts. Milohnic, a single man receiving a salary from the Consolidated Edison Company, had not filed any income tax returns for the years 1936, 1937, 1938, 1939. This being discovered, Warren sent him a formal notice to appear at his office, which after some delay he did, and in an interview they agreed that Milohnic should pay $150, in

return for which Warren should see to it that he did not have to pay either federal or state income taxes for the years in question. Warren did not take the stand and the evidence against him consisted substantially altogether of Milohnic's testimony as to what passed between them, and Warren's admissions after his arrest. There can be no question of the sufficiency of the evidence, and the only errors complained of concern the conduct of the trial, as we have said.

The first of these is that the judge by constant comment and interruption throughout the trial so hampered and interfered with the defence that a fair trial was impossible. We have examined the passages of which the accused complains, and, while at times the judge was somewhat curt in his rulings, it would be unwarranted to hold that his bearing towards the accused could have really prejudiced him with the jury. It would be idle to take up the details of a criticism which as a whole appears to us unfounded. Indeed, the disposition of courts to reverse judgments because of minor excesses in the exercise of the judge's authority at the trial has much abated; separate passages cut from their context and from the trial as a whole, often have an apparent importance which in fact they do not deserve. We do not of course mean that we may ever abdicate our essential duty of insuring an impartial conduct of the trial; that is quite as important as an understanding of the rights and liabilities involved—indeed, in the end even more so—but nothing conduces less to it than an over jealous scrutiny of every word that may fall from the judge's mouth.

The supposed errors in admission or rejection of evidence were a group of four. The first was the exclusion of a tentative calculation of Milohnic's federal income taxes made by Warren after his arrest. On what theory this can be thought competent on behalf of an accused who did not take the stand, we are unable to conceive. It does not very definitely appear at what interview he made this computation; but in any event since it was no part of any admission introduced by the prosecution against him, it could not have been competent in his favor. The second and third of this group of supposed errors were in refusing to allow the accused upon cross-examination to ask a revenue agent, Poling, whether he had ever computed Milohnic's taxes; and later, to ask whether another

agent, Isaacs, had not in fact computed them. As to Isaacs the questions were plainly incompetent for the answers would have been hearsay. The excuse as to Poling is that as an "expert" he was qualified to compute the tax. But, regardless of whether the situation was one for an "expert," the only facts in evidence from which any computation could have been made were those in Milohnic's testimony, and these were not adequate for that purpose; they do not comprise all the necessary items. The fourth error of this group was in the prosecution's summing up, in which the prosecutor said that he had in his file a computation showing that Milohnic's federal tax was $52. This was certainly improper and the judge should have corrected it; he did so, after a fashion, in his charge to the jury; that was not all that it should have been, but, considering the entire record, the error was not important enough to justify the mistrial which the accused demanded, and it is no ground for reversal.

Three other errors are also grouped together. The first and second were the denial to the accused of adequate opportunity to examine an exhibit which he put in evidence at the end of the prosecution's case. It was a record of the accused's statement when brought before other revenue agents, and it contained little if anything that was not already in the case. That aside, the judge gave the defence half an hour to address the jury and to familiarize himself with the exhibit; the time given was ample for both. The third error was that the accused was not allowed adequately to cross-examine a revenue agent called by the prosecution as to whether Milohnic had been offered any inducement to testify. Since Milohnic was himself guilty of a crime and was presumably in part actuated by a desire to escape punishment, this was a reasonable demand, and the judge should have allowed the examination to go further than it did, though the witness did testify that no promise had been made to Milohnic. However, Milohnic's position presumptively gave him the strongest motive to collaborate with the prosecution, and the chance was small that further examination would have proved important. Moreover, Warren's guilt was clear. Even assuming that there might have been some doubt if the federal tax alone had been concerned, his offer to include the state tax was strong evidence of his guilt. It is fantastic to suppose that in his position he should not have known that he was engaged in an unlawful transaction; and no jury in its senses would have accepted an explanation plainly made out of whole cloth without even the support of his own testimony.

Judgment of conviction affirmed.