**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**David Leon BRADSHAW,**
**Defendant-Appellant.**

**No. 82–1017.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 15, 1982.

Decided Oct. 19, 1982.

Rehearing and Rehearing En Banc
Denied Dec. 14, 1982.

Stevan Noxon, Asst. Federal Public Defender, Fresno, Cal., for defendant-appellant.

Phillip S. Cronin, Asst. U. S. Atty., Fresno, Cal., for plaintiff-appellee.

Before WISDOM * and DUNIWAY, Senior Circuit Judges, and NORRIS, Circuit Judge.

WISDOM, Senior Circuit Judge:

Convicted by a jury of kidnapping in violation of 18 U.S.C. § 1201(a), David Leon Bradshaw argues on appeal that the trial court abused its discretion in admitting evidence of other crimes, improperly interrogated a witness, and erred in denying defense counsel's motion that he be examined concerning his competency to stand trial. The appellant further maintains that the evidence was insufficient to support the verdict. Finding no merit in any of his claims, we AFFIRM.

I.

The victim in this case, Charles "Cory" Shults, was a nine-year-old boy. David Leon Bradshaw, the defendant/appellant, was the maintenance man at, and later the manager of, the Delano Motel in Delano, California, where the victim and his mother lived off and on from the summer of 1979 until July 29, 1981, when the mother moved from the motel and her son ran away with the appellant.

Cory, his older brother, Billy, and his mother, Alice Faye Estrella, first moved into the Delano Motel in the summer of

* The Honorable John Minor Wisdom, Senior Circuit Judge, United States Court of Appeals for the Fifth Circuit, sitting by designation.

1979. The appellant was then a resident of the motel and employed as its maintenance man. Ms. Estrella remained with her sons at the motel for six or seven months while she looked for appropriate living arrangements in town. Shortly after leaving the motel, however, she returned with Cory on December 29, 1980, and rented a room adjacent to Bradshaw's. The older son was left with his grandparents. The victim was at this time nine years old, and Bradshaw was serving as the motel's manager.

During the next six months, Bradshaw spent a great deal of time with Cory. The two went to Disneyland and the Fresno Zoo together, and on several camping trips. When school was in session, Cory spent every other weekend, including nights, with the defendant. Ms. Estrella later testified that she then believed her son and Bradshaw had a "father-son type of relationship".

In early July 1981, a few weeks before Ms. Estrella planned to depart the motel for a second time, she arranged for Cory to stay with his aunt, Theresa Crumb, in Pixley. Evidence was presented at trial that her reason for sending the boy to stay with his aunt was a doubt about the nature of his relationship with Bradshaw. This doubt was in part prompted by her observation of bite marks, or "hickeys", on Cory's neck once or twice after his trips with the appellant. Despite Ms. Estrella's insistence that he not see Bradshaw after the move, Cory continued to meet with the appellant.

On July 29, 1981, while Cory's mother was moving her belongings from the motel to a new home, Cory visited Bradshaw in his room, and Bradshaw suggested that they move to Oklahoma together. The appellant told the boy that the two of them would be gone for a long time, until the child turned eighteen or at least nine years, and that he was not to mention their plans to his aunt. Later, after packing the boy's clothes, Bradshaw met Cory in an appointed location, and the two began their journey. The appellant drove with the boy through Nevada and Texas to Durant, Oklahoma. There, and at motels along the way, the two engaged in mutual sodomy and oral copulation. Bradshaw also supplied the boy with drugs, specifically marijuana and speed capsules, and attempted to dye the child's hair.

The appellant was arrested on August 4 and indicted on August 21, 1981 for kidnapping in violation of 18 U.S.C. § 1201(a).[1] At his November 1981 jury trial in the District Court for the Eastern District of California, defense counsel moved under 18 U.S.C. § 4244 to determine Bradshaw's competency to stand trial. This motion was denied. At the conclusion of the prosecution's case, the defendant moved for a mistrial, but this motion was also denied. After three days of trial, the jury convicted Bradshaw, and five days later he renewed his motion for a determination of competency. After denying the motion, the district court sentenced Bradshaw to 30 years in custody pursuant to 18 U.S.C. § 4205(a).

On appeal, Bradshaw raises four issues. He contends, first, that the district court abused its discretion in admitting evidence of other crimes—the sex and drug activity—because its limited probative value was far outweighed by its prejudicial effect, and that, once it had admitted such evidence, the trial court should have given the requested cautionary instruction concerning the importance of considering only the offense charged. Second, he argues that the district court erred in denying defense counsel's motion for a mistrial based on improper and prejudicial questioning of a witness by the trial judge. Third, he claims that it was error for the lower court not to permit a psychiatric examination under section 4244. Finally, Bradshaw contends that the evidence was insufficient to support the judgment.

---

1. 18 U.S.C. § 1201(a) provides, in relevant part:

 (a) Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when:

 (1) the person is willfully transported in interstate or foreign commerce; . . .
 shall be punished by imprisonment for any term of years or for life.

## II.

### A. *Evidence of Sex and Drug Activity.*

Bradshaw maintains that all evidence relating to his sexual activity with Cory, both before and during the journey to Oklahoma, and to any drugs which he may have supplied the boy, should have been excluded as irrelevant under Fed.R.Evid. 404(b), and even if relevant, as unduly prejudicial under Rule 403. We decline to accept that interpretation of these rules.

Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

■ Rule 404(b) is "one of inclusion which admits evidence of other crimes or acts relevant to an issue in the trial, except where it tends to prove *only* criminal disposition." *United States v. Rocha,* 553 F.2d 615, 616 (9th Cir. 1977) (emphasis in original). *See also* 2 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 404[08] (1981). Rule 404(b), however, is subject to the balancing test of Rule 403. *United States v. Sangrey,* 586 F.2d 1312, 1314–15 (9th Cir. 1978). In admitting relevant evidence under the rule, therefore, "the trial court must balance the probative value of the evidence against the possibility that the jury would be prejudiced against the defendant because of his participation in other criminal conduct." *United States v. Young,* 573 F.2d 1137, 1140 (9th Cir. 1978). This determination is largely a matter for the discretion of the district court. *United States v. Young,* 573 F.2d at 1140; *United States v. Hearst,* 563 F.2d 1331, 1336 (9th Cir. 1977), *reh. denied,* 573 F.2d 579 (9th Cir. 1978), *cert. denied,* 435 U.S. 1000, 98 S.Ct. 1656, 56 L.Ed.2d 90 (1978).

■ Bradshaw is correct when he points out that the district court did not fully articulate its reasoning when balancing the probative value of the sex and drug activity with its prejudicial effect. Nevertheless, we cannot now say, as this Court could not say in *United States v. Potter,* that "under the circumstances of this case the failure of the trial judge to formally articulate the balancing test constituted reversible error," 616 F.2d 384, 389 (9th Cir. 1979), *cert. denied,* 449 U.S. 832, 101 S.Ct. 101, 66 L.Ed.2d 37 (1980). Evidence of drug use and sexual relations with a nine-year-old boy was obviously prejudicial to the defendant. But it was also relevant to show Bradshaw's dominion over Cory. The contention that the victim consented to the trip, and, therefore, that he was not kidnapped, made the evidence of sex and drug activity occurring after the kidnapping admissible. *See Holden v. United States,* 388 F.2d 240, 242 (1st Cir. 1968), *cert. denied,* 393 U.S. 864, 89 S.Ct. 146, 21 L.Ed.2d 132 (1968).

■ The government also argues that the evidence of sexual relations was probative of Bradshaw's motive in taking the boy to Oklahoma. Relying on several decisions of this Court, the appellant responds that motive, or purpose, is not an element of the kidnapping charge. *See Gawne v. United States,* 409 F.2d 1399, 1403 (9th Cir. 1969), *cert. denied,* 397 U.S. 943, 90 S.Ct. 956, 25 L.Ed.2d 123 (1970), *reh. denied,* 397 U.S. 1059, 90 S.Ct. 1368, 25 L.Ed.2d 680 (1970); *Dawson v. United States,* 292 F.2d 365 (9th Cir. 1961). Although it is true that motive need not be proved under 18 U.S.C. § 1201, it is far from irrelevant. Motive is evidence of the commission of any crime. This Court has previously held evidence of sexual relations admissible because of its relevance to motive in a kidnapping case. *See United States v. Gibson,* 625 F.2d 887 (9th Cir. 1980). It was pointed out in *Gibson* that while there may be no substantial issue of motive under section 1201(a), "the subsequent conduct does tend to present a picture, the whole of which indicates guilt. . . . The picture of a kidnapping is not complete unless all of the relationships of the defendant to the victims, from the beginning of

the illegal detention to the end of it, are shown." *Id.* at 888.[2]

■ Although the district court did not clearly articulate the balancing analysis called for by Rule 403, we are satisfied from our reading of the trial record that the probative value of the evidence of sex and drug activity occurring after the illegal detention was not "substantially outweighed by the danger of unfair prejudice". In response to defense counsel's motion *in limine* to exclude all references to other crimes, the district court did rule that the evidence was admissible. A more clearly articulated statement of the balancing of probativeness and prejudice would have been desirable, but as long as it appears from the record as a whole that the trial judge did the necessary weighing before admitting the proffered evidence we conclude that the requirements of Rule 403 have been satisfied. As was stated in *Sangrey,* "we refuse to require a mechanical recitation of Rule 403's formula on the record as a prerequisite to admitting evidence under Rule 404(b)", 586 F.2d at 1315.

We are also convinced from our evaluation of the record that the trial judge did not err when he refused to exclude evidence of sexual relations and drug use prior to the kidnapping. Like the activity which occurred after Cory and Bradshaw left the State of California, this activity was relevant to the issue of consent, the defendant's chief defense at the trial.[3] Moreover, the district court found that defense counsel opened up these areas on cross-examination, and we cannot say that the decision to permit the prosecutor to ask questions on these subjects was an abuse of discretion.[4]

B. *Limiting Instruction.*

Given that the evidence of sex and drugs was admitted, Bradshaw maintains that the district court erred in not giving the requested limiting instruction. When evidence is admitted under Rule 404(b), he argues, the trial court should ordinarily instruct the jury carefully as to the limited purpose for which the evidence was admitted. While we believe that a more carefully drafted instruction could have been given in this case, we do not find, as Bradshaw believes we should, that "in consideration of the total circumstances, the appellant was denied a fair trial."

■ Once evidence of other crimes has been admitted under Rule 404(b), it is important that the trial judge caution the jury regarding the reasons why it was admitted. *United States v. Sangrey,* 586 F.2d at 1314. Limiting instructions may reduce or eliminate prejudice which would otherwise occur. *United States v. O'Brien,* 601 F.2d 1067, 1070 (9th Cir. 1979). If no limiting instruction is requested by the defendant, however, the failure of the court to give an instruction will not necessarily result in reversible error. *United States v. Sangrey,*

---

**2.** *See also* the statement in Wigmore that "In evidencing the act charged, it may be necessary to describe an affair which involves a number of acts, one or more others of which will also be crimes. Such proof is receivable, because it is inseparable from the act charged." 2 Wigmore Evidence § 306(3) (Chadbourn rev. 1979).

**3.** The trial court avoided ruling on the admissibility of prior sexual conduct when it admitted the evidence occurring after the illegal detention. The court did note, however, the potential relevance of the testimony to the issue of consent: "It would seem to me that if the first act of sexual gratification occurs after the abduction, then there is no way you're going to argue to the jury convincingly that there was a relationship that caused this boy to consent, particularly in view of his own statements." (R.T. 11 12)

**4.** The pertinent questions and answers were as follows:

DEFENSE COUNSEL: Okay. The sex activity that you mentioned, did that only occur in those motels?

CORY: Yeah. And at his house. (R.T. 164–65)

\* \* \* \* \* \*

DEFENSE COUNSEL: Okay. And you went over and you visited David in his motel room, is that right?

CORY: Yes.

DEFENSE COUNSEL: At that time had you had any marijuana to smoke?

CORY: No.

DEFENSE COUNSEL: Did you have any drugs whatsoever?

CORY: Not me. (R.T. 172–73)

586 F.2d at 1315. But "[s]hould the court give such an instruction, either on request or on its own motion, the court must be careful to instruct the jury correctly as to the limited purpose for which the evidence is admitted." *United States v. Aims Back,* 588 F.2d 1283, 1287 (9th Cir. 1979). The rationale of this rule is that an improper limiting instruction may go so far as to enhance the prejudicial effect of the objectionable testimony. *Id.*

██ Bradshaw requested a limiting instruction in this case, and the district court gave one. Far from differing in content, however, both the trial court's instruction and the appellant's proposed instruction were in substance nearly identical. That given was but an abbreviated version of that requested. The court's instruction cautioned the jury that "The defendant here is not on trial for any act or conduct not alleged in the indictment." The appellant's proposed instruction, the rejection of which he now claims was error, went little further, and certainly stopped short of "emphasizing the importance of considering only the offense charged", as he argues.[5]

██ In *United States v. Aims Back,* this Court reversed a conviction when a cautionary instruction had been given but when the trial court did not state the specific purpose for admitting the evidence. The Court there found the trial court's statement that the jury could consider the evidence "for whatever it is worth" to be clearly prejudicial. 588 F.2d at 1286–7. Unlike that given in *Aims Back,* we cannot say that the trial judge's instruction in this case, which differs only slightly from the instruction requested, was an abuse of discretion, let alone prejudicial. Instructions need not be given in the precise language requested by the appellant. *United States v. Skinner,* 667 F.2d 1306, 1310 (9th Cir.

1982); *United States v. Lee,* 589 F.2d 980, 985 (9th Cir. 1979), *cert. denied,* 444 U.S. 969, 100 S.Ct. 460, 62 L.Ed.2d 382 (1979). The adequacy of jury instructions is determined by examining them in their entirety, and the refusal to give a requested instruction will not be overturned "if the charge as a whole adequately covers the theory of the defense." *United States v. Kaplan,* 554 F.2d 958, 968 (9th Cir. 1977), *cert. denied,* 434 U.S. 956, 98 S.Ct. 483, 54 L.Ed.2d 315 (1977), *reh. denied,* 434 U.S. 1026, 98 S.Ct. 755, 54 L.Ed.2d 774 (1978). "The question is whether the complete package was misleading or represented a statement inadequate to guide the jury's deliberations." *United States v. Elksnis,* 528 F.2d 236, 238 (9th Cir. 1975) (citing *United States v. Park,* 421 U.S. 658, 673–76, 95 S.Ct. 1903, 1912–1913, 44 L.Ed.2d 489, 501–03 (1975)). Examining the instructions as a whole, we are unable to find that the jury was misled by the trial judge's limiting instruction.

In view of the possible prejudicial effect on the jury of the evidence relating to Bradshaw's sex and drug activity with Cory, we would have preferred a more carefully drafted instruction. But because the appellant's requested instruction differs only slightly from that given, and because our reading of the record convinces us that the objectionable testimony was admitted only for purposes of proving motive and disproving consent, we do not find the failure to give such an instruction to be reversible error.

### III.

At the conclusion of the second day of trial, after the government had rested its case, defense counsel made a motion for a mistrial based in part on improper questioning of a witness by the trial judge.[6] Argu-

---

**5.** The full text of appellant's proposed instruction was as follows: "He is not on trial in this court for any act or conduct not alleged in the indictment. You are instructed to only consider the evidence presented in this case as to whether a federal kidnapping offense has been proved beyond a reasonable doubt and you are not to concern yourself as to whether the evi-

dence establishes proof of other crimes that are not charged in this proceeding."

**6.** The appellant claims as a further ground for mistrial the introduction of testimony relating to the discovery of a firearm in his car. However, the questioning of Tulare County Sergeant McCoy about this incident occurred after

ing that the questions reflected a partisan view and were highly prejudicial, the appellant maintains that it was a clear abuse of discretion for the district court to deny the motion. We disagree.

The complained-of colloquy occurred following redirect examination of the government's fourth witness, Donna Domingo, a woman who had raised Bradshaw for several years and whom Bradshaw had informed of his intention to leave the state with Cory. The inquiry proceeded as follows:

> THE COURT: Mrs. Domingo, you indicated that you had these conversations with David over four or five times and that he announced his intent to take the boy from California to Oklahoma. Did you report that to anyone? You can answer that question "yes" or "no".
>
> THE WITNESS: No.
>
> THE COURT: You didn't call—you didn't see fit to call his mother and say—
>
> THE WITNESS: I don't know Cory's mother.
>
> THE COURT: Well, did you attempt to find out who Cory's mother was?
>
> THE WITNESS: I discussed talking to Cory's mother with David (the defendant).
>
> THE COURT: And what conclusion did you reach after you talked to David?
>
> THE WITNESS: That I could talk him out of going.
>
> THE COURT: And that's the only reason you didn't call the authorities and notify them of the *impending kidnapping* that you thought that you personally could handle the matter?
>
> THE WITNESS: Before I was told anything I promised faithfully I would not tell anything of our conversation. . . .
>
> THE COURT: Well, when it develops that the conversation anticipates *a crime as serious as kidnapping,* don't you think that both morally and legally you are released from such an obligation?

> THE WITNESS: David and I have discussed different things at different times. And usually he'll listen if I try and talk him out of something.

(emphasis added)

The appellant contends that the trial judge's questioning was improper and prejudicial because the words "impending kidnapping" and "anticipate[d] crime as serious as kidnapping" were used to describe his discussions with Mrs. Domingo prior to leaving California with Cory. The use of these words, he asserts, unfairly suggested to the jury how the judge believed they should decide the case.

Fed.R.Evid. 614(b) acknowledges the judge's power to interrogate any witness appearing before him.[7] This power has long been recognized as "[o]ne of the natural parts of the judicial function". 3 Wigmore, Evidence § 784 at 189 (Chadbourn rev. 1970). *See also* 3 J. Weinstein and M. Berger, Weinstein's Evidence ¶ 614[03] (1981). Although a trial judge may question witnesses to clarify and develop facts, he must never prejudice the defendant by assuming a partisan stance. *United States v. Medina-Verdugo,* 637 F.2d 649, 653 (9th Cir. 1980); *Rogers v. United States,* 609 F.2d 1315 (9th Cir. 1979). We do not believe that the trial judge here assumed such a stance. Before the questions now objected to were made, Mrs. Domingo's testimony had already established that Bradshaw planned to leave the state with Cory. The trial judge's interrogation of Mrs. Domingo must be examined in the context of this testimony because "separate passages cut from their context and from the trial as a whole, often have an apparent importance which in fact they do not deserve". *United States v. Warren,* 120 F.2d 211, 212 (2d Cir. 1941) (Learned Hand,

---

defense counsel had already introduced the subject by inquiring of Durant Police Captain Headrick, who made the arrest in Oklahoma, whether he had found any weapons in the motel room. (R.T. 233). Possession of a gun is also relevant to the issue of Bradshaw's dominion over Cory.

7. Rule 614(b) provides that "The court may interrogate witnesses, whether called by itself or by a party."

J.). So viewed, the trial court's questions were clearly directed at the issue of the boy's consent and at the passivity of the witness.

 We also note that the judge advised the jury that they alone determine the facts and credibility, and that nothing he said was meant to suggest what verdict they should find.[8] Such an admonition is generally adequate. *See, e.g., United States v. Medina-Verdugo,* 637 F.2d at 653; *United States v. Swacker,* 628 F.2d 1250, 1254 (9th Cir. 1980). In short, the record in this case shows no bias or attempt on the part of the trial court to usurp the role of the prosecutor.

## IV.

The appellant next argues that the district court erred in denying his two motions for a psychiatric examination and a competency hearing pursuant to 18 U.S.C. § 4244. A review of the decisions of this Court interpreting section 4244 reveals the weakness of this argument.

 The existence of a genuine doubt about a defendant's competence is not what determines whether the court must order an examination pursuant to 18 U.S.C. § 4244.[9] *Chavez v. United States,* 656 F.2d 512, 516 (9th Cir. 1981). A motion to determine competency under section 4244 can be denied without granting a psychiat-

ric examination only if the trial judge correctly determines that the motion is frivolous, is not in good faith, or does not set forth the grounds relied upon for believing that the accused may be incompetent. *United States v. Irvin,* 450 F.2d 968, 970 (9th Cir. 1971); *Meador v. United States,* 332 F.2d 935, 937 (9th Cir. 1964). It is not necessary that the trial court have reasonable grounds for believing the defendant incompetent. "The 'reasonable cause' referred to in section 4244 is that of the movant, not the court." *Meador,* 332 F.2d at 938. Consequently, the trial judge should avoid evaluating the defendant's competency until after the examination has taken place. *Chavez,* 656 F.2d at 516.

 If the report of the psychiatrist indicates a state of present insanity or mental incompetency in the accused, the statute requires a hearing. One is not required, however, on the basis of a section 4244 alone, if the psychiatric examination does not indicate present incompetence. *United States v. Winn,* 577 F.2d 86, 92 (9th Cir. 1978) (dictum). Following the examination, a·judicial determination of competence or incompetence is required, regardless of the opinions expressed in the report.

 Here there was no hearing because the trial judge denied the appellant's two motions for a psychiatric examination

---

8. In its instructions, the district court stated that "you as jurors are the sole judges on the credibility of the witnesses and the weight their 'testimony deserves." (R.T. 379) The trial judge also added the cautionary note that "What the verdict shall be is the sole and exclusive responsibility of the jury." (R.T. 439 40)

9. 18 U.S.C. § 4244 provides, in part:
 Whenever after arrest and prior to the imposition of sentence or prior to the expiration of any period of probation the United States Attorney has reasonable cause to believe that a person charged with an offense against the United States may be presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense, he shall file a motion for a judicial determination of such mental competency of the accused, setting forth the ground for such belief

with the trial court in which proceedings are pending. Upon such a motion or upon a similar motion in behalf of the accused, or upon its own motion, the court shall cause the accused, whether or not previously admitted to bail, to be examined as to his mental condition by at least one qualified psychiatrist, who shall report to the court. For the purpose of the examination the court may order the accused committed for such reasonable period as the court may determine to a suitable hospital or other facility to be designated by the court. If the report of the psychiatrist indicates a state of present insanity or such mental incompetency in the accused, the court shall hold a hearing, upon due notice, at which evidence as to the mental condition of the accused may be submitted, including that of the reporting psychiatrist, and make a finding with respect thereto.

on the grounds that they bordered on the frivolous, and that no reasons for believing the appellant incompetent were set forth, as the statute requires. "When there has never been a psychiatric evaluation, a hearing, and judicial determination of competence in the proceeding, our review is comprehensive." *Chavez,* 656 F.2d at 517; *Darrow v. Gunn,* 594 F.2d 767, 771 (9th Cir. 1979), *cert. denied,* 444 U.S. 849, 100 S.Ct. 99, 62 L.Ed.2d 64 (1979). We believe the district court was correct in its interpretation of the statute, and properly denied both motions.

When defense counsel first raised the issue of Bradshaw's competency on the second day of trial, he did not move for an examination under the statute. Nor did he state or submit an affidavit to the effect that he entertained a reasonable, good faith doubt about his client's ability to understand the nature and consequences of his not guilty plea, participate intelligently in the proceedings, or make a reasoned choice among his alternatives. He merely presented to the district court the November 16, 1981 psychiatric report of Dr. Dale Moses and other materials for its determination of whether an examination and hearing should be ordered. When twice questioned by the court whether he would make a motion under section 4244, defense counsel replied that he would not. Only when he was informed that such a motion would not be considered unless the defense raised

it did counsel move for a section 4244 examination and hearing. The motion was then denied because the trial judge could find nothing in the report to indicate incompetency.[10] Prompted by a follow-up letter from Dr. Moses which concluded that the appellant was unable to cooperate in his own defense, counsel renewed the motion after trial. But like the first, this motion was denied because neither Dr. Moses's letter nor defense counsel could set forth any grounds for believing the appellant to be incompetent.[11] The trial judge went on to note that he had "suspicions" regarding counsel's statement that the motion was not frivolously made.[12]

■ We agree with the district court that to satisfy the statutory requirement of "setting forth the ground for such belief", a moving party under section 4244 must do more than was done in this case. Counsel must point to some manifestation of incompetency that prompted the motion. If a psychiatric evaluation is relied upon, as is the case here, then the report must state the reasons for concluding that the accused may be incompetent. The statute requires more than a one-sentence opinion that the defendant may be unable to "cooperate in such a manner that would minimize the possibility of punishment". Here the conclusion that the motions were frivolous is inescapable. Defense counsel repeatedly refused to identify any grounds that would justify a section 4244 examination, and

**10.** In his first report, Dr. Moses found Bradshaw to be "an extremely immature, though not necessarily mentally-ill person". The appellant was diagnosed as suffering from a "gender identity disorder of childhood", and from "undifferentiated type" schizophrenia complicated by extensive drug use. No opinion was given other than that the appellant was a "mentally disordered sex offender," and this assessment was never in doubt nor disputed.

**11.** Dr. Moses's second report, which was not based on a second interview with the appellant, was a one-sentence letter stating "Pursuant to my psychiatric examination of David Leon Bradshaw, it is my considered opinion that, because of a mental disorder, he is not capable at the present time of objective, rational deci-

sions regarding matters concerning his own defense or to cooperate in such a manner that would minimize the possibility of punishment."

**12.** In denying the second motion for a psychiatric examination, the trial judge was openly critical of defense counsel's handling of the section 4244 issue

You lived with this case ... from August 21st. You saw this man, I hope, constantly during that period. Your investigator saw him. You indicated—you didn't even file an affidavit indicating any manifestations of incompetency. Now you say the motion is not taken frivolously and I accept that on its face. But I'm somewhat suspicious of that statement. (R.T. 456)

twice declined to make a motion when given the opportunity by the trial court.[13]

This decision is not contrary to the holding of *United States v. Irvin,* 450 F.2d at 970. The Court there reversed a lower court ruling that the defendant was not entitled to a psychiatric examination, finding that there was no suggestion of frivolity and that defense counsel's observations adequately presented the grounds for believing the defendant incapable of participating in his own defense. Neither statement can be made in this case.[14]

### V.

 Bradshaw also contends that the evidence fails to support the verdict. When reviewing the sufficiency of the evidence on appeal, the critical inquiry is whether, after examining the evidence in the light most favorable to the government, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Federico,* 658 F.2d 1337, 1343 (9th Cir. 1981) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979)). We believe that from the testimony of the expert witness, Dr. Velosa, and the victim, Cory Shults, a jury could clearly find that the boy was "inveigled" to accompany Bradshaw to Oklahoma, and that the victim lacked the sufficient mental capacity to make an intelligent choice. The appellant has pointed to nothing unusual in the evidence that would require reversal.

We have reviewed the appellant's other contentions on appeal and find them to be without merit.[15]

AFFIRMED.

---

**13.** Other circuits have held that a section 4244 examination was properly denied under similar circumstances. *See, e.g., United States v. Hill,* 526 F.2d 1019, 1023 (10th Cir. 1975), *cert. denied,* 425 U.S. 940, 96 S.Ct. 1676, 48 L.Ed.2d 182 (1976) (trial court acted within its discretion in denying motion for examination where he found that motion was not made in good faith and was a ruse to obtain continuance); *United States v. Hall,* 523 F.2d 665, 667 (2d Cir. 1975) (even when trial court had knowledge that the defendant had been confined to a state hospital where he had a psychotic episode, a district court's denial of a section 4244 examination is not improper if the allegations have been insufficient to establish the reasonable cause required by the statute); *United States v. Taylor,* 437 F.2d 371, 376 n.7 (4th Cir. 1971) (ordering an examination is not a perfunctory or ministerial act, but one calling for the exercise of judicial discretion to determine whether there is reasonable cause to believe that defendant may not be competent to be tried).

**14.** Because we find that the trial court properly denied both motions under section 4244, we need not rule on Bradshaw's motion to strike his presentence report, which contains additional psychiatric data on the appellant, from the government's brief.

**15.** Among his other claims is that he was denied a fair trial because of prosecutorial misconduct. Specifically, he points to the introduction by the prosecutor of the testimony relating to sexual activity and drug use occurring prior to the illegal detention, and to evidence of a gun in Bradshaw's car. Yet, as we pointed out in notes 4 and 6, *supra,* it was the defense counsel, and not the prosecutor, who opened up these areas on cross-examination. We also believe that the prosecutor's references to the appellant's "abominable sexual practices" in his closing argument does not require reversal. This Court has previously held that "improprieties in counsel's arguments to the jury do not require a new trial unless they are so gross as probably to prejudice the defendant, and the prejudice has not been neutralized by the trial judge." *United States v. Parker,* 549 F.2d 1217, 1222 (9th Cir. 1977), *cert. denied,* 430 U.S. 971, 97 S.Ct. 1659, 52 L.Ed.2d 365 (1977). The prosecutor made it clear that the evidence relating to sexual activities should be considered only in determining motive and purpose. Moreover, the court informed the jury that their verdict must be based only on the charges in the indictment. We think this is sufficient to neutralize any prejudice. *See United States v. Potter,* 616 F.2d 384, 390 (9th Cir. 1979), *cert. denied,* 449 U.S. 832, 101 S.Ct. 101, 66 L.Ed.2d 37 (1980).

Similarly without merit is Bradshaw's claim that the district court erred in refusing to give the requested jury instruction on consent. To confuse the standard of the competency of a child to testify with the standard of a child to give consent, as the court here did, was to establish a much lower threshold for consent. The appellant was thus favored, not prejudiced, by any error of the trial court on this point.