953 F.2d 1389
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Yousef KOULIBALY, Defendant-Appellant.
 No. 90-10567.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 13, 1992.
Decided Jan. 30, 1992.
 
 Before SNEED, SCHROEDER and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Yousef Koulibaly appeals the district court's order denying his motion for a mental examination prior to trial. Koulibaly was convicted, following a jury trial, of various drug offenses. Koulibaly contends that the district court erred in failing to order a mental examination to determine his competence for trial. The district court concluded that Koulibaly's motion was frivolous and made in bad faith. The court relied on evidence showing that Koulibaly had no history of mental illness and had boasted that he could manipulate the date of his trial to secure a more lenient federal judge by feigning mental illness.
 
 
 3
 Apart from Koulibaly's own assertions that he was suffering from hallucinations and could not sleep, the only other support for his claim of mental incompetence comes from the testimony of Doug Bowen, the prison psychiatric social worker. On July 25, 1990 (just one week prior to trial), Koulibaly asked to see a psychiatrist. He was sent to Doug Bowen for a screening evaluation. Bowen met with him four times before trial. (July 25, 27, 28 and 30). During their conversations, Bowen observed that Koulibaly had "flattened affect" and "pressured speech." Koulibaly would mispronounce words, stare blankly, act frightened and wander off onto other subjects while they talked. Bowen noted that Koulibaly was lucid "most of the time," but was preoccupied with his attorney's purported inadequacies.
 
 
 4
 Bowen had Koulibaly transferred to the prison psychiatric ward and, because he admitted considering self-destructive acts, placed him on suicide "safety status." A suicide had occurred in the prison shortly before Koulibaly's request to see a psychiatrist. Bowen admitted that, as a result, prison personnel were treating prisoners with heightened caution. At the competency hearing Bowen testified that he did not know that Koulibaly had boasted to others that he planned to feign mental illness, nor did he know that Koulibaly had, in the past, effectively lied about his identity. Bowen admitted that this information probably would have affected his assessment of Koulibaly's mental competency.
 
 
 5
 During the hearing on Koulibaly's motion for a mental examination, the district court also heard testimony from Julie Green, a prison social worker. She told the court that shortly before Koulibaly's trial he explained to her that a defendant could "maneuver the system" to secure a more lenient trial judge. He listed eight federal judges and noted which judges were more or less lenient. After their conversation, another prison inmate came to her office and informed her that Koulibaly was planning a "mental health scam."
 
 
 6
 According to Agent Madinger, the final witness to testify at the hearing, Koulibaly's pre-trial demeanor changed measurably when Judge Conti was present in the courtroom. When Judge Conti was gone from the courtroom, Koulibaly would gesture, smile, use facial expressions and speak animatedly. When Judge Conti was present in the courtroom Koulibaly adopted a rigid, frozen, nonresponsive demeanor.
 
 
 7
 Koulibaly has no history of mental illness. From his initial appearance before the court on February 25, 1990, until late July (shortly before trial), Koulibaly appeared normal, communicative, lucid and well equipped to assist in his own defense. During two ex parte, in camera proceedings, he debated with Magistrate Conklin the wisdom of trial strategy decisions made by his assigned counsel.
 
 
 8
 The district court concluded, based on the evidence presented at the hearing and the relevant pleadings, that (1) there did not exist sufficient basis for a mental examination of the defendant, (2) the motion for such examination was frivolous, and (3) the motion was made in bad faith.
 
 
 9
 Relevant Ninth Circuit law permits a district court to deny a defendant's motion for a mental examination "if the trial judge correctly determines that the motion is frivolous, is not in good faith, or does not set forth grounds relied upon for believing that the accused may be incompetent." United States v. Bradshaw, 690 F.2d 704, 712 (9th Cir.1982) cert. denied, 103 S.Ct. 3543 (1983).
 
 
 10
 The district court in this case was obliged to examine the evidence initially presented and weigh whether reasonable cause and good faith were demonstrated. The district court found reasonable cause to conduct a hearing, and at that hearing learned that the defendant was engaged in an elaborate scheme to manipulate the identity of the judge who would hear his case. In this case, the district court heard evidence that Koulibaly had actually articulated to others his plan to use mental illness as a delay tactic. The appellant contends that because there was some evidence, in the form of his testimony and Bowen's, supporting a claim of mental illness, the district court was required to order a trial delaying mental examination. The existence of such evidence cannot override the overwhelming showing that the request was in bad faith.
 
 
 11
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3