988 F.2d 123
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ramon GONZALEZ-GARCIA, Defendant-Appellant.
 No. 92-10271.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 3, 1993.
Decided Feb. 25, 1993.
 
 Appeal from the United States District Court for the District of Arizona, No. CR-91-00337-WDB; William D. Browning, District Judge, Presiding.
 D.Ariz.
 AFFIRMED.
 Before ALARCON, RYMER and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellant Ramon Gonzalez-Garcia was convicted of two counts of illegally transporting aliens in violation of 8 U.S.C. § 1324(a)(1)(B) and 18 U.S.C. § 2. The district court sentenced Garcia to four months of incarceration. Garcia appeals, alleging that 1) the district court erroneously admitted evidence of his prior bad acts; 2) the district court erroneously gave the jury an Allen charge; 3) the district court wrongfully denied Garcia a transcript of his pre-trial suppression hearing; 4) the district court erroneously admitted hearsay evidence; 5) he did not violate 8 U.S.C. § 1324(a)(1)(B) because he did not transport aliens "in furtherance of" their illegal presence in the United States; 6) that the prosecutor engaged in prejudicial misconduct before the grand jury; and 7) that the cumulative impact of these errors merits reversal. We affirm the judgment of conviction because Garcia has failed to demonstrate prejudicial error.
 
 I.
 
 3
 On July 18, 1991 Border Patrol Agent Raul Teran observed five people boarding Ramon Gonzalez-Garcia's (Garcia) taxi at an intersection one block north of the United States-Mexico border in Nogales, Arizona. The passengers noticed Agent Teran and "froze." Agent Teran drove to within five yards of the vehicle. Agent Teran saw Garcia turn around and speak to the passengers. The passengers existed the taxi immediately after Agent Teran saw Garcia speak to them. Agent Teran ordered them to stop. Francisco Triana-Beltran (Triana) and Domingo Tejada-Diaz (Tejada) were two of Garcia's passengers. Neither had documents permitting them to be in the United States.
 
 
 4
 Agent Teran took Tejada and Triana to a Border Patrol Station to be questioned further. Teran questioned them in Spanish, and they replied in Spanish. Agent Teran testified that he is fluent in Spanish. Both passengers admitted that they were in the country illegally. Both stated that Garcia knew they were in the country illegally because they had told him.
 
 
 5
 Agent Teran prepared a report of this conversation. Although he spoke to the aliens in Spanish, he wrote his report in English. After he read the report back to Triana and Tejada, they signed the report. He testified the report was an accurate reflection of the conversations he had with Tejada and Triana.
 
 
 6
 At a video deposition on July 25, 1991, before Magistrate Judge Raymond R. Terlizzi, both Triana and Tejada testified that they did not understand what they signed and that the defendant did not know that they were illegal aliens. The magistrate judge dismissed the case against Garcia for lack of probable cause.
 
 
 7
 On August 7, 1991, the Government presented its case against Garcia to the grand jury. The prosecution called Border Patrol Agent Tom Watson as its only witness. Agent Watson testified that the aliens told Agent Teran that they were in the country illegally and that Garcia knew they were illegal aliens. After Agent Watson's testimony, the grand jury returned an indictment against Garcia. On September 12, Defendant moved to dismiss the indictment. On October 7, Chief Judge William D. Browning denied the motion. On November 19, Garcia filed a motion for a transcript of Agent Teran's testimony at the suppression hearing. Judge Browning denied the motion the following day.
 
 
 8
 During trial, Judge David A. Ezra admitted testimony by two border patrol agents that Garcia had been stopped previously for transporting illegal aliens. Agent Sharon Theis testified that on June 9, 1991, she stopped Garcia's taxi. She further testified that Garcia's taxi contained five undocumented aliens, four of whom had been lying down in the back seat. None of the aliens possessed immigration documents. Agent Theis told Garcia it was illegal to transport undocumented aliens. Agent John Stevenson testified that he stopped Garcia's taxi on June 25, 1991. Garcia's cab contained 15 passengers, all of whom were returned voluntarily to Mexico after the stop.
 
 
 9
 During the Government's direct examination of Agent Teran, Agent Teran testified without objection that Triana and Tejada told him that they had entered the United States illegally. On cross-examination, Garcia's counsel asked Agent Teran if Triana told him that Garcia knew he was transporting illegal aliens. Agent Teran testified that Triana said that Garcia knew that he and Tejada were in the country illegally. During its redirect examination of Agent Teran, the Government asked Agent Teran if Triana said that Garcia knew he was transporting illegal aliens. Agent Teran testified that Triana stated that Garcia knew that he and Tejada were illegal aliens. Garcia did not object to the Government's questioning of Agent Teran. After the Government moved to admit Triana's written statement into evidence, Garcia's counsel objected on the ground that the written statement was not credible. The Government later moved to admit Tejada's written statement into evidence. Garcia's counsel objected on the same ground. These objections were overruled. At Garcia's request, the court admitted the videotaped depositions of Tejada and Triana in which they testified that Garcia did not know that they were in the United States illegally.
 
 
 10
 During its deliberations the jury sent a note to the judge stating that it was deadlocked. The court gave the jury an Allen charge. The jury returned its verdict of guilty at 4:40 p.m.
 
 II.
 
 11
 Garcia argues that the district court abused its discretion by allowing the Government to elicit testimony that Garcia had previously been stopped twice by Border Patrol agents with undocumented aliens in his taxi. Garcia asserts that the probative value of the evidence of his prior conduct was outweighed by its prejudicial effect. The admission into evidence of a defendant's prior bad acts is reviewed for abuse of discretion. United States v. Espinoza, 578 F.2d 224, 228 (9th Cir.), cert. denied, 439 U.S. 849 (1978).
 
 
 12
 Garcia made a pre-trial motion to exclude this testimony under Federal Rule of Evidence 403 on the ground that the prejudicial effect of the evidence substantially outweighed its probative value. In response to Garcia's motion, the Government argued that the evidence of the prior stops was highly probative of Garcia's knowledge and intent. Without entertaining oral argument, the district court denied the motion to exclude the evidence regarding Garcia's prior conduct. The district court did not indicate on the record that it had balanced the probative value of the evidence against its prejudicial effect. A district court is not required to make a finding that it has balanced the probative value of an offer of proof against its prejudicial effect to comply with Rule 403. United States v. Ono, 918 F.2d 1462, 1465 (9th Cir.1990). "It is enough that this court can conclude, based on a review of the record, that the district court considered Rule 403's requirements." Id. We have examined the record and conclude that the district court balanced the evidence's probative value against its prejudicial effect before denying Garcia's motion. Prior to making his ruling, Judge Browning had received memoranda from both parties arguing the merits of Garcia's claim that the evidence of the prior acts would be substantially more prejudicial than probative. Cf. id. at 1465-66 (record indicates that the district court balanced the prejudicial effect of the evidence of defendant's prior conviction against its probative value because district court entertained defendant's oral argument that evidence of his prior conviction should be excluded).
 
 
 13
 Evidence of other crimes, wrongs, or acts is admissible to prove opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Fed.R.Evid. 404(b). If the prejudicial effect of evidence of the prior acts outweighs its probative value, it should not be admitted. Espinoza, 578 F.2d at 227.
 
 
 14
 We have previously held that the admission of evidence of prior acts of transporting illegal aliens to prove a defendant's knowledge that he was transporting illegal aliens is not an abuse of discretion because the probative value of such evidence is not outweighed by the danger of unfair prejudice. In United States v. Holley, 493 F.2d 581, 584 (9th Cir.), cert. denied, 419 U.S. 861 (1974), evidence was introduced showing that the defendant had previously been apprehended, but not prosecuted, for transporting illegal aliens. We held that the district court did not abuse its discretion in admitting evidence of this prior act to prove that the defendant knew he was transporting illegal aliens. Id. In United States v. Herrera-Medina, 609 F.2d 376 (9th Cir.1979), the government introduced evidence that the defendant had two prior arrests for transporting illegal aliens. Id. at 379. The defendant was not prosecuted for these acts. Id. at 380. On appeal, he sought reversal on the ground that the evidence of his arrests was weak and contradictory. Id. at 379. In affirming the admission of the evidence of the prior arrests, we reasoned that the government's failure to prosecute the defendant following the arrests weakened the probative value of the incidents. Id. We concluded, however, that the district court did not abuse its discretion in permitting the Government to introduce the evidence to prove that the defendant knew he was transporting illegal aliens. Id.
 
 
 15
 There is no principled distinction between the circumstances presented in these cases and the record in the instant matter. One agent testified that she stopped Garcia's taxi after she saw four passengers lying down in the back seat of his taxi. Another agent testified he stopped Garcia and discovered fifteen illegal aliens in his taxi. These prior acts tend to prove that Garcia knew he was transporting undocumented aliens on July 18, 1991. We note also that in this matter the district court gave limiting instructions both at the time the evidence was admitted and at the close of trial. These limiting instructions make it less likely the jury used the evidence for an improper purpose. See United States v. Bradshaw, 690 F.2d 704, 709 (9th Cir.1982) (stating that after evidence of prior bad acts is admitted under Rule 404(b), it is important to caution the jury why the evidence was admitted because limiting instructions can reduce or eliminate prejudice which would otherwise occur), cert. denied, 463 U.S. 1210 (1983).
 
 
 16
 Garcia argues that the prior acts are too dissimilar to the act for which he was prosecuted to be relevant to show knowledge because the prior acts took place at night and he was prosecuted for an act that took place in broad daylight. "When offered to prove knowledge, however, the prior act need not be similar to the charged act as long as the prior act was one which would tend to make the existence of the defendant's knowledge more probable than it would be without the evidence." United States v. Ramirez-Jiminez, 967 F.2d 1321, 1326 (9th Cir.1992). The probative value of the evidence of Garcia's prior acts was not outweighed by the danger of unfair prejudice merely because that conduct occurred at night. The prior acts tended to show that Gonzalez knew he was transporting illegal aliens. Further, the district court's timely limiting instructions lessened the danger of unfair prejudice. See Bradshaw, 690 F.2d at 709 ("Limiting instructions may reduce or eliminate prejudice which would otherwise occur."). The district court did not abuse its discretion by failing to exclude the evidence under Rule 403.
 
 III.
 
 17
 Defendant argues the district court's Allen charge coerced the jury into returning a guilty verdict. We review jury instructions for abuse of discretion, viewing the instructions as a whole. United States v. Wauneka, 842 F.2d 1083, 1088 (9th Cir.1988). "The test for impropriety of an Allen charge is whether, in its context, the instruction had a coercive effect." Id. "This circuit evaluates coerciveness on the basis of 1) the form of the instruction; 2) the period of deliberation following the Allen charge; 3) the total time of jury deliberations; and 4) the indicia of coerciveness or pressure upon the jury." United States v. Foster, 711 F.2d 871, 884 (9th Cir.1983), cert. denied, 465 U.S. 1103 (1984).
 
 
 18
 We have upheld an Allen charge in cases involving comparable factual records. In Wauneka, the defendant argued that he had been convicted after the district court gave a coercive Allen charge. 842 F.2d at 1088. The defendant did not specifically identify the alleged coercive language in the instruction given by the court. Instead, he asked the court to infer coercion because of the "short" period of jury deliberations after the charge. Id. at 1089. In Wauneka, the Government did not dispute appellant's contention that the period of deliberation following the Allen instruction was "short." We held in Wauneka that the record did not indicate that the instruction had a coercive effect. Id. We reasoned that there was no evidence that the jury was frustrated over its inability to reach a verdict. We further noted that there was no indication that the district court knew how the jury stood when the Allen instruction was given. Id.
 
 
 19
 We also upheld an Allen charge in United States v. Ajiboye, 961 F.2d 892, 894 (9th Cir.1992). We held that the instruction was not coercive because it was only given once, the jury deliberated for a lengthy period after the charge, and the trial court admonished the jurors not to surrender an honest conviction simply to reach a verdict. Id.
 
 
 20
 Garcia has failed to demonstrate that the district court's Allen charge had a coercive effect on the jury's deliberations. The district court twice told the jury members to not abandon conscientiously held views. See Ajiboye, 961 F.2d at 894 (stating that an Allen charge is less likely to be coercive if the jurors are admonished not to abandon conscientiously held views). It also told the jury to deliberate leisurely and to take all the time it felt necessary to reach a verdict. See United States v. Bonam, 772 F.2d 1449, 1451 (9th Cir.1985) (per curiam) (a factor that may be considered in determining whether an Allen charge was coercive is whether the jury was instructed to deliberate leisurely). The jurors were not told the case would have to be retried, nor were minority jurors told to examine their views in light of the majority. See id. at 1450-51 (an instruction that the minority jurors should reexamine their views may be coercive, and an admonition that the case will have to be retried is improper). Instead, every juror was asked to reexamine his or her views. Finally, the district court told the jury that the case was important to both sides, and that the case should be resolved under the instructions the judge had given it.
 
 
 21
 Garcia argues that we should infer coercion based on the short period between the Allen charge and the jury's guilty verdict. The record does not reflect the length of time the jury deliberated after the Allen charge. In any event, a short deliberation period is not indicative of coercion if the issues before the jury are simple in nature. Bonam, 772 F.2d at 1451.
 
 
 22
 Garcia further argues that the district court gave two Allen charges in violation of United States v. Seawell, 550 F.2d 1159 (9th Cir.1977). We held in Seawell that we must reverse if the record shows that the trial court gave two Allen instructions. Id. at 1163. Garcia asserts that the district court gave two Allen charges because it gave the essential elements of Allen in its initial charge to the jury before it commenced its deliberations, and then repeated the Allen charge after the jury reported it was deadlocked. The Seawell rule does not apply when a district court gives an Allen instruction as part of its initial charge to the jury and repeats the Allen charge after the jury reports it is deadlocked. United States v. Armstrong, 654 F.2d 1328, 1333-35 (9th Cir.1981), cert. denied, 454 U.S. 1157 (1982). The Seawell rule only applies when the Allen instruction is given a second time in response to the jury's second report of deadlock. United States v. Nickell, 883 F.2d 824, 829 (9th Cir.1989). In the matter before this court, the jury only reported that it was deadlocked on one occasion. Therefore, Garcia's reliance on the Seawell rule is misplaced.
 
 
 23
 Finally, Garcia contends that the judge's post-verdict polling of the jurors reflects that the Allen charge was coercive. Garcia claims that a juror had to be "prodded" into replying that the verdict was his own after questioning by the judge. Garcia has failed to demonstrate that any juror was improperly "prodded" to state his or her guilty vote.
 
 IV.
 
 24
 Garcia claims that the denial by Judge Browning of a copy of the transcript of the suppression hearing denied him his right to prepare an adequate defense including the impeachment of Agent Teran's trial testimony. "We review a claim that the denial of a transcript request violated a defendant's constitutional right to prepare an adequate defense de novo." United States v. Kirk, 844 F.2d 660, 662 (9th Cir.), cert. denied, 488 U.S. 890 (1988).
 
 
 25
 The Supreme Court has held that a state "must, as a matter of equal protection, provide indigent prisoners with the basic tools of an adequate defense or appeal, when those tools are available for a price to other prisoners." Britt v. North Carolina, 404 U.S. 226, 227 (1971). The Supreme Court instructed in Britt that we must employ a two-factor test in determining the need for a transcript: "1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and 2) the availability of alternative devices that would fulfill the same functions as a transcript." Id.
 
 
 26
 Judge Browning did not err in denying the motion for a transcript of the suppression hearing. Because the trial had not yet occurred, Garcia did not purport to make a showing before Judge Browning that Agent Teran's trial testimony would be inconsistent with his testimony at the suppression hearing. Obviously, such showing could only be made after the witness had testified. Denial of Garcia's pretrial motion did not preclude his counsel from renewing the motion after Agent Teran had testified at trial. Until Agent Teran had testified, Garcia could not make an offer of proof regarding the necessity to use the transcript to impeach Agent Teran's trial testimony.
 
 
 27
 Garcia did not subpoena the court reporter to testify to Teran's alleged prior inconsistent statements at the suppression hearing. Because Garcia has failed to make a showing of the necessity for a transcript of the suppression hearing at the time he made his request to Judge Browning, and did not attempt to utilize alternative means of impeaching Agent Teran after he testified, we conclude that Garcia has failed to demonstrate that Judge Browning's ruling deprived him of his right to due process in preparing his defense.
 
 V.
 
 28
 Garcia argues that the district court abused its discretion in admitting the written statements of Triana and Tejada into evidence. For the first time in this appeal, Garcia claims that the written statements were inadmissible hearsay and not covered by the exception set forth in Rule 804(b)(3) of the Federal Rules of Evidence.
 
 
 29
 During the Government's direct examination of Agent Teran, Agent Teran testified that he took statements from Triana and Tejada while they were in custody. Agent Teran testified as follows on direct examination:
 
 
 30
 Q: And at the station did you take sworn statements from Mr. Triana and Mr. Tejada?
 
 
 31
 A: Yes, sir, I did.
 
 
 32
 Q: Before you took these sworn statements did you explain to them what you were doing?
 
 
 33
 A: Yes, sir.
 
 
 34
 Q: Did Mr. Triana indicate to you during this conversation, did he state to you that he was here illegally?
 
 
 35
 A: Yes, sir.
 
 
 36
 Q: At the same time did Mr. Tejada state that he was here illegally?
 
 
 37
 A: Yes.
 
 
 38
 Q: Did you ask them if they had any documents to be here?
 
 
 39
 A: Yes.
 
 
 40
 Q: Did they indicate whether they did?
 
 
 41
 A: They had no documents whatsoever.
 
 
 42
 On cross-examination of Agent Teran, Garcia's counsel questioned Agent Teran about the contents of the written statement he prepared following his questioning of Triana. The record reflects the following colloquy:
 
 
 43
 Q: You have a question here that says, "When the taxi driver talked to you, did he know that both of you were illegal aliens?" And your response is, "Yes, he did know." Is that right?
 
 
 44
 A: The aliens' response?
 
 
 45
 Q: But this is what you typed?
 
 
 46
 A: Yes, ma'am.
 
 
 47
 Q: And your question is, "How did he know?" And the response is, "We told him that we were here illegally," isn't that correct?
 
 
 48
 A: Yes, ma'am.
 
 
 49
 Q: That is signed by Mr. Francisco Beltran [Triana]?
 
 
 50
 A: Yes, ma'am.
 
 
 51
 On redirect examination, Agent Teran was asked if Triana told him that Garcia knew that he was transporting illegal aliens. The Government's questioning proceeded as follows:
 
 
 52
 Q: Now, did you ask Mr. Triana-Beltran if he had any knowledge about whether or not Mr. Gonzalez knew that he was an illegal alien?
 
 
 53
 A: Yes.
 
 
 54
 Q: What did Mr. Triana Beltran [sic] tell you in response to your question?
 
 
 55
 A: His response was, yes, he did know.
 
 
 56
 Q: What is the next question that you asked?
 
 
 57
 A: How did he know?
 
 
 58
 Q: What was Mr. Triana's response?
 
 
 59
 A: "We told him that we were here illegally."
 
 
 60
 Garcia did not object to these questions.
 
 
 61
 Garcia's counsel objected to the admission of Triana's written statement. The record reflects the following colloquy concerning admissibility:
 
 
 62
 Ms. Borbon: I object to the admission of the exhibit.
 
 
 63
 The Court: On what basis, counsel?
 
 
 64
 Ms. Borbon: It's incredible in light of the testimony.
 
 
 65
 The Court: That will be for the jury to determine. They will have the opportunity to weigh the credibility of the exhibit. They can make their decision as to what credibility to give it.
 
 
 66
 The Court does find that it's admissible; but, ladies and gentlemen, when I admit something into evidence that is not an impramatur [sic] from this Court that it's reliable or isn't reliable. That is up to you to make that determination.
 
 
 67
 The Court will receive it in evidence.
 
 
 68
 (Reporter's Transcript, December 4, 1991, at 81) (emphasis added). It is clear from the record that Garcia's counsel did not object on the basis that Triana's statement contained inadmissible hearsay. When the Government moved to admit Tejada's written statement into evidence, Garcia's counsel objected on the same ground. The objection was overruled.
 
 
 69
 We do not reach Garcia's contention that the written statements were erroneously admitted as hearsay because Garcia's counsel failed to object to the admission of the statements on that ground when expressly asked to state the basis for her objection. The only objection to the admission of the statements was that the statements were "incredible." As the district court correctly noted, the jury decides whether evidence is credible. United States v. Binder, 769 F.2d 595, 602 (9th Cir.1985) ("It is the juror's responsibility to determine credibility by assessing the witnesses and witness testimony in light of their own experience."). The fact that Garcia objected to the admission of the written statements as "incredible" does not permit him to rely on a discrete evidentiary rule on appeal. The failure to object to the admission of the written statements at trial precludes him from presenting it on appeal in the absence of a showing of plain error. See United States v. Gomez-Norena, 908 F.2d 497, 500 (9th Cir.) ("a party fails to preserve an evidentiary issue for appeal not only by failing to make a specific objection, but also by making the wrong specific objection" (citations omitted)), cert. denied, 111 S.Ct. 363 (1990).
 
 
 70
 "Plain error will be found only if the error was highly prejudicial and there was a high probability that the error materially affected the verdict." United States v. Anguiano, 873 F.2d 1314, 1319 (9th Cir.), cert. denied, 493 U.S. 969 (1989) (internal quotation marks omitted). "Reversal of a criminal conviction on the basis of plain error is an exceptional remedy, one which we invoke only when it appears necessary to prevent a miscarriage of justice or to preserve the integrity and reputation of the judicial process." United States v. Bosch, 951 F.2d 1546, 1548 (9th Cir.1991) (quoting United States v. Bustillo, 789 F.2d 1364, 1367 (9th Cir.1986)) (internal quotation marks omitted), cert. denied, 112 S.Ct. 2975 (1992).
 
 
 71
 The admission of the written statements was not highly prejudicial, nor was there a high probability that the evidence materially affected the verdict. The testimony that Triana told Agent Teran that Garcia knew that he was transporting illegal aliens was first elicited by his own attorney during the cross-examination of Agent Teran. Garcia did not object when the prosecutor asked Agent Teran on redirect examination whether Triana told him that Garcia knew he was transporting illegal aliens. Thus, the admission of the written statements containing the same assertion could not have prejudiced Garcia or materially affected the verdict because the written statements were cumulative to evidence introduced by Garcia's attorney. In addition, Garcia was permitted to introduce the depositions of Triana and Tejada during which each testified under oath that Garcia did not know they were illegal aliens. Garcia has failed to demonstrate that the admission of the written statements was plain error.
 
 VI.
 
 72
 Defendant argues that his transportation of Tejada and Triana was not "in furtherance of" their illegal presence in the United States within the meaning of section 1324(a)(1)(B). Section 1324(a)(1)(B) requires that before a person can be convicted under the statute, the transportation must be "in furtherance of" the alien's illegal presence in the United States. United States v. Moreno, 561 F.2d 1321, 1322 (9th Cir.1977). We review questions of statutory construction de novo. United States v. One 1984 Ford Van, 826 F.2d 918, 919 (9th Cir.1987). In Moreno, the government prosecuted the foreman of a company for transporting workers whom he knew to be illegal aliens from one job site to another. This court reversed the defendant's conviction, reasoning that "the mere transportation of a person known to be such an [illegal] alien is not sufficient to constitute a violation of [section 1324]." Id. at 1322. This court further reasoned that the foreman's job of transporting the aliens was part of the "ordinary and required course of his employment." Id. Thus, "his transportation of the aliens was only incidentally connected to the furtherance of the [alien's] violation of law, if at all. It was too attenuated to come within the boundaries of [section 1324]." Id. However, the Moreno court emphasized that it did not hold that "there is an ipso facto exemption for those who transport undocumented aliens for employment or as an incident to employment." Id. at 1323. Instead, this court held that there "must be a direct or substantial relationship" between the defendant's transportation of an alien and its furtherance of the alien's presence in the United States. Id.; see also 1984 Ford Van, 826 F.2d at 920 (stating that the use of a van to take aliens from one job site to another was too attenuated to make it forfeitable under section 1324).
 
 
 73
 Defendant argues that his case is like Moreno because his transportation of his passengers is an incident of his job as a taxi driver. We disagree. Moreno only requires proof of a direct and substantial relationship between the defendant's transportation of the alien and the alien's continued illegal presence in the United States. 561 F.2d at 1323. Unlike the foreman in Moreno, Garcia's attempted transportation of the aliens had a substantial relationship to the aliens' continued illegal presence in the United States involving transportation from a border town to a major metropolitan area where they could find more work. Contrary to Garcia's assertion, this ruling does not subject taxi drivers to guiltless prosecutions. The burden remains on the prosecution to prove that the taxi driver knew that he was transporting illegal aliens.
 
 VII.
 
 74
 Garcia also seeks reversal on the ground that the record shows prosecutorial misconduct in the presentation of this matter to the grand jury. The district court's ruling on whether a prosecutor's misconduct before the grand jury warrants dismissal of the indictment is subject to de novo review. United States v. DeRosa, 783 F.2d 1401, 1404 (9th Cir.), cert. denied, 477 U.S. 908 (1986).
 
 
 75
 Garcia makes three allegations of grand jury abuse. First, Garcia argues that the Government did not offer possible exculpatory evidence to the grand jury. This argument is without merit. The prosecutor has no duty to present exculpatory evidence to the grand jury. United States v. Williams, 112 S.Ct. 1735, 1746 (1992).
 
 
 76
 Garcia also maintains that misconduct occurred because the grand jury witness, Border Patrol Agent Tom Watson, had no personal knowledge of the facts at issue. This argument is also meritless. We have held that a summary witness may testify at a grand jury proceeding even if the government could have produced percipient witnesses. United States v. Al Mudarris, 695 F.2d 1182, 1185-86 (9th Cir.), cert. denied, 461 U.S. 932 (1983).
 
 
 77
 Garcia further asserts that the Government committed prosecutorial misconduct by presenting false evidence to the grand jury. Garcia contends that Agent Watson made three material and false misstatements to the grand jury. Dismissal of an indictment is warranted only if "prosecutorial misconduct has undermined the grand jury's ability to make an informed and objective evaluation of the evidence presented to it." United States v. Sears, Roebuck & Co., Inc., 719 F.2d 1386, 1391 (9th Cir.1983).
 
 
 78
 Garcia first alleges that Watson testified that Garcia knew Tejada and Triana were illegal aliens. Agent Watson testified that "[t]he aliens told them [agents Teran and Monroe] that the taxi driver had made arrangements with them at the bus station to take them to Phoenix knowing that they were illegal aliens." That statement is not false. When viewed in the light most favorable to the Government, the record shows that the aliens told Agent Teran that they were illegal aliens. Second, Agent Watson testified that the Border Patrol still had Triana and Tejada as witnesses. This statement was not true. It also was not relevant to any issue before the grand jury. Therefore, no misconduct is shown because Garcia has not shown that Watson's misstatement affected the grand jury's ability to make an informed decision.
 
 
 79
 Third, Garcia alleges that Agent Watson told the grand jury that Garcia "told [the aliens] that the border patrol is coming and to get out of his taxi." Agent Watson had previously testified that "the driver turned and started talking to his passengers. They immediately got out and started to walk in different directions." We agree that Agent Watson's later testimony was apparently based on his inference from the facts rather than upon direct evidence of Garcia's actual conversation with the aliens. However, because the jury knew the factual basis for Agent Watson's inference, its ability to evaluate objectively the evidence before it was not undermined.
 
 VIII.
 
 80
 Garcia claims that the cumulative effect of the errors he alleged merit reversal. Because Garcia has demonstrated no error, this contention is devoid of merit.
 
 
 81
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3