**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Robert Orlan HOLLEY, Defendant-Appellant.**

**No. 73–1753.**

United States Court of Appeals, Ninth Circuit.

March 11, 1974.

Rehearing Denied May 8, 1974.

**582**

Alexander L. Landon (argued) San Diego, Cal., for defendant-appellant.

Harry D. Steward, U. S. Atty., E. Mac Amos, Jr., Asst. U. S. Atty. (argued), San Diego, Cal., for plaintiff-appellee.

David B. Moon, Jr., Bourne, McDade, Fitzgerald & Moon, San Diego, Cal., for amicus.

Before CHAMBERS and HUFSTEDLER, Circuit Judges, and McNICHOLS,* District Judge.

## OPINION

McNICHOLS, District Judge:

Appellant, Holley, was convicted after trial by jury, on all counts of a four-count indictment charging the illegal transportation of four aliens as proscribed by 8 U.S.C. § 1324(a)(2).

■ During the course of the trial, the central issues in controversy were knowledge and intent on the part of the defendant. It is not disputed that Holley was a taxicab driver operating in the South Bay area of San Diego County, California, who responded to a radio call from the company dispatcher; that as a result of the dispatcher's instruction he proceeded to an area near a used car lot where he picked up four male passengers; that the passengers were Mexican Nationals, illegally in the United States, who had illegally entered the United States within three years prior to entering the taxicab operated by the appellant; and that appellant transported the aliens in the cab. It was incumbent on the government to further prove knowledge and intent on the part of the defendant. Bland v. United States, 299 F.2d 105 (5th Cir. 1962).

As proof of knowledge on the part of the appellant that the passengers were aliens, illegally in the country, and to prove intent by him to transport them in violation of the law, the government offered evidence which tended to establish the following facts:

1. That the area where the passengers were picked up was a semi-isolated spot with brushy ground cover nearby.

2. That the passengers did not speak English.

3. That they appeared to be of Mexican descent.

4. That they wore mud-stained clothes.

5. That they were not certain of their exact destination and did not have sufficient money to pay the potential fare.

6. That appellant had been, on a prior occasion, detained by police authorities for transporting illegal aliens in his private automobile.

7. That upon arrest in the instant case, appellant made a statement to the immigration authorities in which he indicated that he was aware of the illegal alien status of the four men.

■ It is clear that the government adequately met the requisite burden of proof and that a prima facie case was established. When we view the evidence, as we must, in the light most favorable to the government, (Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L. Ed. 680) we hold, contrary to appel-

---

* Honorable Ray McNichols, United States District Judge, District of Idaho, sitting by special designation.

lant's contention, that the evidence was sufficient to sustain the convictions.

A vigorous defense was mounted, calculated to controvert the elements of knowledge and intent. Through appellant himself, other cab drivers, a labor union representative for the taxi drivers union, and taxi company executives and employees, a picture of the difficulties facing cab drivers in the South Bay area of San Diego County was illuminated.

This evidence tended to show that because of the close proximity to the Mexican-American border, a high percentage of cab passengers in the area are people of Spanish or Mexican lineage, many of whom do not speak English. It was shown that frequently illegally entered aliens used or attempted to use taxicabs for transportation. The authorities and the labor union representing the drivers had unsuccessfully tried to work out methods whereby drivers could report suspected aliens. It was contended that drivers, depending on tips for adequate earnings, could not, from a practical standpoint, demand identification from prospective passengers to determine legal right to be in the United States. It was further emphasized by evidence produced on behalf of the appellant that taxicab company policy and local ordinance each required that cab drivers avoid discrimination and accept fares seeking transportation.

Appellant contends that the Court unduly and erroneously limited this defense evidence offered to depict the quandary in which cab drivers in the area in question found themselves. It is stressed that such evidence was vitally important to show the potential state of mind of the defendant as it bore on the essential issues of knowledge and intent. We have therefore carefully reviewed the evidentiary transcript and find that, notwithstanding the appellant's assertions, the evidence was permitted to be rather fully developed. We entertain no doubt but that the jury was well apprised of the defense theory and the underlying problems facing the defendant as a cab driver in the area. In this respect, no error is demonstrated.

■ During the testimony of the appellant, defense counsel sought to introduce into evidence, as an exhibit, an extract from the San Diego County Regulatory Code, making it an offense for a licensed cab driver to refuse a prospective passenger.[1] The authenticity of the proffered exhibit was not challenged. Upon offer, the Court ruled that the exhibit would be admitted as being relevant to the defendant's state of mind if a proper foundation were laid to show that the accused was in fact familiar with the contents. Unfortunately for the defense, Holley's testimony in this regard was conflicting. While he initially testified that he knew that he was obliged to tender service to all prospective passengers, when pressed as to a specific knowledge of the sections of the ordinance contained in the exhibit, he admitted to being unsure that he had ever seen them. On this state of the evidence the trial court sustained an objection to the exhibit on the ground that the necessary foundation was lacking. Appellant and amicus[2] strenuously urge that the exclusion of the exhibit constituted reversible error. We disagree. The Court below ruled favorably on the admissibility of the exhibit subject to adequate acquaintance with the contents

---

1. *San Diego County Code of Regulatory Ordinance* 21.320.

    .     .      .     .

(m) It shall be unlawful for the driver or operator of any taxicab to refuse a prospective passenger or to take any action to actively discourage a prospective passenger unless the taxicab driver believes that the prospective passenger may constitute a hazard to such driver.

(n) Violation of any of the provisions of this section shall constitute grounds for the immediate suspension or revocation of the driver's identification card.

2. Pursuant to an Order of this Court, counsel for the Transportation and Allied Workers of California, Seafarers International Union of North America, A.F.L.–C.I.O. Cab Drivers Division, were permitted to file a brief in amicus curiae.

by the witness, which acquaintance was not established.[3] The appellant was permitted to testify that he knew of some law or regulation [4] which was a part of his union contract and which required taxi drivers to pick up all prospective passengers. He and two other witnesses were likewise permitted to testify that the established policy of the employer taxicab company required the drivers furnish rides to all prospective passengers at the risk of loss of employment. Again it is evident that appellant was allowed to fully develop a theory of the defense and the rejection of the exhibit itself was not reversible error.

We are strengthening our view that appellant was able to adequately present in full the various defense theories by the fact that no contention is made that the jury argument was curtailed in anywise or that the jury was improperly instructed on the law.

Three other citations of error merit consideration.

■■ Counsel for the appellant submitted to the Court in advance of the trial a list of forty-two proposed voir dire questions which he requested the Court to direct to the prospective jurors. We have examined these questions and have compared them with the voir dire conducted by the trial judge. The majority of areas of inquiry covered by the request of defense counsel were covered by the trial judge in his questioning. This Court is committed to the rule that the scope of the voir dire examination is a matter within the sound discretion of the trial judge. Haslam v. United States, 431 F.2d 362 (9th Cir. 1970). Our study of the record discloses no abuse of that discretion.

■■ Appellant had been apprehended on a prior occasion while transport-

ing illegal aliens (although no prosecution resulted). The trial judge allowed testimony to this effect over objection by appellant's counsel. Generally, evidence of a prior criminal act is inadmissible, but as an exception to the rule, such prior act may be introduced to show state of mind or intent, design, knowledge or lack of innocent purpose. In the present case where appellant's knowledge was a critical issue, there was no abuse of discretion in the admission of evidence of the prior similar conduct. United States v. Jiminez-Robles, 415 F.2d 308 (9th Cir. 1969).

■ During the cross-examination of the defendant, government counsel was permitted, over objection, to elicit an admission of a prior felony conviction. The prior conviction occurred more than thirty years before the trial and was in no way related to the present activity. The admission of evidence of prior felony convictions, for the purpose of impeachment of the defendant-witness, has been consistently countenanced in this Circuit. United States v. Michaelson, 453 F.2d 1248 (9th Cir. 1972).

No reversible error being demonstrated in the record, we affirm.

HUFSTEDLER, Circuit Judge (dissenting):

In my view the admission of evidence that Holley had been arrested for transporting illegal aliens and the introduction of evidence of his 30-year-old conviction for forgery were errors requiring reversal.

The majority opinion concludes that appellant's May 1972 arrest for transporting illegal aliens was admissible for the purpose of proving his knowledge that the persons he transported in his taxicab in 1973 were aliens illegally in

---

3. On this state of the record we need not examine into the propriety of the practice of admitting extracts from local statutes or ordinances into evidence vis-a-vis the taking of judicial notice by the Court of such laws. Here no request was made of the trial judge that he take judicial notice of the regulation involved.

4. The appellant was of the impression that the regulatory provision was a city ordinance of the City of San Diego.

this country. The Government's foundation for the introduction of this evidence was inadequate because it failed to demonstrate sufficient similarity between the events that anteceded Holley's 1972 arrest and those that led to the charges that brought him here. (*See, e. g.,* Parker v. United States (9th Cir. 1968) 400 F.2d 248, 251–252; 2 Wigmore, Evidence (3d ed. 1940) §§ 302, 324.) In 1972, Holley picked up a well-dressed man and woman who were hitchhiking near his cab garage and gave them a ride in his private automobile. He drove them through the DeLuz Canyon, a route that circumvents a highway alien checkpoint. A border patrol agent ascertained that the couple were illegal aliens. The 1973 incident from which this conviction resulted involved transporting four alien males in his taxicab after he had responded to a radio call from the company dispatcher. The locality of the 1973 pick-up was an urban area a substantial distance from the cab garage. The number, age, sex, and attire of the aliens in each instance were different. The mode of transportation and the locations were different. Indeed, no similarity whatever exists between the two sets of events except that the persons transported eventually were identified as illegal aliens. However, even if the two incidents were substantially similar, the prior arrest was in no way relevant to the issue of Holley's knowledge that the four persons he transported in his taxicab in 1973 were illegally in the country. To infer Holley's knowledge from the fact that a year earlier he had transported different people under different circumstances who were also illegal aliens is rationally permissive only if common experience teaches that a person who has seen two illegal aliens can distinguish on sight any other illegal aliens. Common experience is to the contrary. (*See generally* United States v. Mallides (9th Cir. 1973) 473 F.2d 859, 861.)[1]

The introduction of this evidence over objection was not harmless error. The only seriously contested factual issue was knowledge; upon this issue the circumstantial evidence was equivocal. The propriety of the introduction of evidence of prior illegal acts is always an unusually sensitive question because of the inherent tendency of fact finders to give it excessive weight. (1 Wigmore, *supra* § 192; *cf.* Parker v. United States, *supra.*) In a case like this one, where the jury might have credited the defense testimony on knowledge, the improper admission of the evidence could well have had a substantial effect on the jury. (*See, e. g.,* Kotteakos v. United States (1946) 328 U.S. 750, 764–765, 66 S.Ct. 1239, 90 L.Ed. 1557; United States v. Lopez-Cruz (9th Cir. 1972) 470 F.2d 193, 194.)

Use of Holley's 1942 forgery conviction to impeach his credibility as a witness was also reversible error. It has been recognized in recent years that the probative value of prior felony convictions on the issue of credibility can be outweighed by the prejudice which revelation of the defendant's past crime would cause. (*See, e. g.,* Luck v. United States (1965) 121 U.S.App.D.C. 151, 348 F.2d 763; United States v. Palumbo (2d Cir. 1968) 401 F.2d 270.) One of the factors of particular importance in balancing possible prejudice against probative value is the remoteness of the conviction: "The nearness or remoteness of the prior conviction is also a factor of no small importance. Even one involving fraud or stealing, for example, if it occurred long before and has been followed by a legally blameless life, should

---

[1]. Because the Government failed to establish that introduction of evidence concerning the May 1972 incident was permissible under an exception to the general rule excluding evidence of prior misconduct, it is unnecessary to consider the problems inherent in using an arrest, which is in effect only an accusation, as evidence of prior misconduct. (*See generally* Lyda v. United States (9th Cir. 1963) 321 F.2d 788, 796; Davis v. United States (8th Cir. 1956) 229 F.2d 181, 185.)

generally be excluded on the ground of remoteness." (Gordon v. United States (1967) 127 U.S.App.D.C. 343, 383 F.2d 936, 940 (Burger, J.); *see* United States v. Puco (2d Cir. 1971) 453 F.2d 539, 543.)

To be sure, the so-called *Luck* rule has not been fully adopted by our court. (United States v. Valle-Rojas (9th Cir. 1972) 469 F.2d 79, 80. *Compare* United States v. Walling (9th Cir. 1973) 486 F.2d 229, 237–238 (there is a division of opinion in the circuit as to the applicability of the *Luck* doctrine) *and* United States v. Stroud (9th Cir. 1973) 474 F. 2d 737, 739 ("It is not clear whether the *Luck* rationale has been adopted in this Circuit.") *with* United States v. Villegas (9th Cir. 1973) 487 F.2d 882, 883 ("The point of our prior decisions is that in this circuit reversible error cannot be predicated upon a refusal to follow the *Luck* rule.").) Nevertheless, we have frequently recognized that old convictions are not a meaningful index of propensity to lie and therefore have followed the well-established rule that some convictions may be too hoary to bear reasonably on the present credibility of a defendant. (*E.g.,* United States v. Allison (9th Cir. 1969) 414 F.2d 407, 412 ("proof of prior convictions for impeachment should be excluded if the trial judge, in the exercise of his discretion, concludes that it lacks sufficient probative value because of the remoteness in time of the convictions"); Singleton v. United States (9th Cir. 1967) 381 F.2d 1, 4; *see* McCormick, Evidence (1954) § 43, at 91.)

The district court apparently recognized its responsibility to exclude unduly old convictions, for it actually ruled, during a colloquy at the bench, that the conviction was not too remote to be used. This ruling was an abuse of discretion.

The conviction used to impeach Holley was more than 30 years old; that is approximately 20 years older than those convictions which will be permitted in federal court for impeachment purposes once the proposed rules of evidence are adopted. (*See* Proposed Rule 609(b).) Although the 10-year limit is not yet the law of our circuit, and while it may be preferable not to establish rigid age limitations on the use of prior convictions for impeachment purposes, I believe that use of a 30-year-old conviction in the case at bench unduly prejudiced the defendant. Accordingly, we should hold that the district court abused its discretion in not excluding Holley's conviction. Again, because the issues in the case were close, it is not possible to hold that the error was harmless.

I would reverse.