**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Manuel Jesus HERRERA–MEDINA, Defendant-Appellant.**

**No. 79–1071.**

United States Court of Appeals, Ninth Circuit.

Dec. 6, 1979.

---

Gerald S. Frank, Asst. U.S. Atty., Tucson, Ariz., for plaintiff-appellee.

Fredric F. Kay, Tucson, Ariz., argued for defendant-appellant; Frank R. Zapata, Asst. Federal Public Defender, Tucson, Ariz., on the brief.

Before DUNIWAY and ELY, Circuit Judges, and FITZGERALD,* District Judge.

DUNIWAY, Circuit Judge:

Appellant Manuel Jesus Herrera-Medina (Herrera) was convicted of transporting four illegal aliens in violation of 8 U.S.C. § 1324(a)(2) and he appeals. We affirm.

## I. FACTS.

On the night of November 16, 1978, Herrera, a Mexican citizen in possession of a valid alien registration card, was stopped by border patrol agents. With him in his car were four aliens who had illegally crossed the border earlier that evening. We state the underlying facts in the light most favorable to the government, as we are required to do.

On the evening of November 16, at about 8:00 o'clock, two border patrol agents were on watch near a combination car wash and gas station located near Douglas, Arizona, and within about half a mile from the Mexican border. They saw two men walking in the shadows toward the car wash. The two men walked into the car wash, spoke briefly with the attendant, and then headed toward the restroom but did not enter, later disappearing into the unlit, brushy area behind the station. Shortly afterward, Herrera drove his car into the car wash. He got out, opened the hood and looked in, stared briefly in the direction of the restroom, and made a sweeping gesture with his arm, as if motioning people to approach. The two men previously seen emerged from the darkened area and came toward Herrera. One of the men, later identified as Daniel Madrid-Rosa, one of the alien witnesses, went back to the brushy area and hid, lying down next to a mesquite bush. Herrera drove off in the car with the other man. The car returned approximately fifteen minutes later. Madrid joined Herrera and the unidentified man and the three left in the car. Border patrol agents later stopped the car Herrera was driving; in it there were four illegal aliens, including Madrid. Three were far enough down in the back seat to be invisible from the rear of the car.

Herrera, Madrid and the three other illegal aliens told a different story. They testified that the aliens had not met Herrera before a meeting at a bar that evening, where Herrera mentioned that he was driving to Naco (a border town in Mexico) that night and agreed to give them a ride. They said that none of the aliens offered to pay Herrera money for the ride. Only one of the aliens said that he had told Herrera that he was in the United States illegally but he qualified his testimony by stating that he did not believe that Herrera had heard him above the noise of the car.

Before trial the government notified Herrera that it intended to introduce evidence of at least two prior incidents at trial. Herrera moved for an order precluding use of this evidence. The motion was denied. It was renewed at trial and overruled.

The first of the prior arrests occurred on July 30, 1977. A detective with the Douglas Police Department testified that at

* The Honorable James M. Fitzgerald, United States District Judge for the District of Alaska, sitting by designation.

about 9:15 that evening he saw three men, first one, then two, coming from the direction of the border, approach a bar located about 300 feet from the border. Herrera's car was parked outside. Soon after, one of these men came out and got in the car; then five more men, including the other two whom the agent had seen, did the same. Next, Herrera left the bar and got into his car and drove it away. When the car was stopped, all occupants except Herrera were identified as illegal aliens.

The second of the prior arrests occurred in September, 1978, beginning at about 9:45 p. m., when border patrol agents discovered nine illegal aliens hiding under a culvert, which they then staked out. This was on a dirt road near the border, outside of Douglas. Testimony is in dispute over Herrera's exact actions during the incident. Stated most favorably to the government, it is that someone had placed a sack, with a rock on it, at the culvert. This alerted the agents, who then discovered the aliens. The agents waited and watched. Presently, Herrera appeared in his car, stopped after he had passed the culvert and the sack, turned the car around, came back to the culvert, stopped again, got out, and called down to the people under the culvert. Herrera claimed he had seen people under the culvert and had stopped to investigate. The border patrol agents testified that when one of the aliens shouted "policia," Herrera attempted to escape.

## II. ADMISSION OF EVIDENCE OF PRIOR ACTS.

■ Rule 404(b), F.R.Ev., provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Such evidence is not looked upon with favor, *United States v. Aims Back*, 9 Cir., 1979, 588 F.2d 1283, 1287. It is admissible only if:

(1) the prior act is similar and close enough in time to be relevant,

(2) the evidence of the prior act is clear and convincing and

(3) . . . the probative value of the evidence outweighs any potential prejudice.

*United States v. Bronco*, 9 Cir., 1979, 597 F.2d 1300, 1302–1303, *quoting United States v. Brashier*, 9 Cir., 1976, 548 F.2d 1315, 1325.[1] It was the government's burden to show that the evidence offered is relevant, and that it is more probative than prejudicial. *United States v. Hernandez-Miranda*, 9 Cir., 1979, 601 F.2d 1104, 1108. However, once such evidence is admitted, its admission will not be held to be reversible error, absent an abuse of discretion by the trial judge. *United States v. Espinoza*, 9 Cir., 1978, 578 F.2d 224, 228.

Herrera concedes that the incidents involved in the two prior arrests were similar and were close enough in time to be relevant. His argument is that the evidence of the prior arrests was weak and contradictory, and that the prejudicial effects of introducing it overwhelmed any probative value it may have had.

■ In deciding whether the evidence of prior acts was clear and convincing, we are mindful that the government introduced the evidence to prove Herrera's knowledge

---

1. Appellant cites *United States v. Feinberg*, 7 Cir., 1976, 535 F.2d 1004, 1009–1010, for the proposition that prior bad acts may not be introduced until the defendant has testified or otherwise put on a defense. The case does not so hold. *United States v. Gaus*, 7 Cir., 1973, 471 F.2d 495, cited in *Feinberg*, does not so hold either. There, the court found no error in the court's permitting the government, in its case in chief, to offer evidence of eleven prior similar offenses. Nor does *United States v. Byrd*, 2 Cir., 1965, 352 F.2d 570, 575, also cited in *Feinberg*, so hold. The most that these cases stand for is that it may be wise for the government to wait to see how the case develops, so that it can show that it needs the evidence before it offers proof of other similar offenses, at least where prejudice is substantial and the necessity for it is slight, or appears to be so. *See* 352 F.2d at 575. No such point was made to the trial court in this case.

that the passengers he transported were aliens who were in the United States illegally. The inference of knowledge from the fact that under different but similar circumstances Herrera had previously transported other people who were also illegal aliens is justified only if, in each case, the facts would support an inference that Herrera knew that those people were illegal aliens. If, in each case, the people only appeared to be of Mexican descent, that would not be enough. *United States v. Brignoni-Ponce*, 1975, 422 U.S. 873, 885–886, 95 S.Ct. 2574, 45 L.Ed.2d 607; *United States v. Munoz*, 9 Cir., 1979, 604 F.2d 1160, 1161; *United States v. Mallides*, 9 Cir., 1973, 473 F.2d 859, 861.

The fact that, in each of the instances of prior arrest, the government did not prosecute, weakens the probative value of those incidents. So does the tendency of juries to give excessive weight to such prior arrests, or to use them to characterize a defendant unfairly. 1 Wigmore, Evidence (3d Ed. 1940) § 194.

■ Nevertheless, in the light of certain of our decisions, we cannot hold here that the admission of the evidence of the prior arrests was an abuse of discretion. In each case, there was more than the mere fact that persons who appeared to be of Mexican descent were involved. In the first occurrence, the men involved had been seen coming from the direction of the nearby border at night, entering a bar, coming out, first one, then others, and entering Herrera's car, and being joined by Herrera and driven away by him, a fairly typical example of a rendezvous between aliens and one who is to assist them. In the second instance, there were the late hour, the marker by the culvert, the aliens hiding there, the arrival of Herrera, his apparent recognizing of the marker, his stopping, returning, and calling out, and his attempt to flee when discovered by the agent. In each case, a fact finder could infer the requisite knowledge on Herrera's part.

We cannot say consistently with our holdings in *United States v. Espinoza*, 1978, 578 F.2d 224, 227–228, and *United States v.*

*Holley*, 9 Cir., 1974, 493 F.2d 581, 584, that the trial court abused its discretion in admitting the evidence of the two prior instances in this case. In *Espinoza*, the prior incident was no more probative than those in the case at bar, and perhaps not as probative. The defendants in that case had not, in the prior incident, picked up illegal aliens. The most that a jury could have inferred was that they had arranged to have another person pick up the aliens. We held that it was not an abuse of discretion to admit the evidence. The per curiam opinion was by Judges Ely, Trask and Anderson. In *Holley*, at least so far as the opinions show, the prior incident was substantially less probative than were the prior incidents in this case. *See* 493 F.2d 585 (Hufstedler, J., dissenting). Yet the majority there found no abuse of discretion in admitting the evidence. We cannot conclude, consistently with these decisions, that it was an abuse of discretion to admit the evidence of prior incidents in this case.

## III. SUFFICIENCY OF THE EVIDENCE.

■ Even if the evidence of the prior incidents is put aside, we conclude that the evidence is sufficient to sustain the verdict. We construe the evidence in the light most favorable to the government. *See Glasser v. United States*, 1942, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680. We will not set aside the jury's verdict unless we are convinced that the jury could not reasonably have concluded from the evidence presented that the defendant was guilty beyond a reasonable doubt. *United States v. Friedman*, 9 Cir., 1979, 593 F.2d 109, 115; *United States v. Ballesteros-Cordova*, 9 Cir., 1978, 586 F.2d 1321, 1324. Here, the place where the crucial events occurred, the hour when they occurred, the furtive behavior of the men who became Herrera's passengers, and his own behavior, taken together, fully support an inference that Herrera knew that his passengers were recently arrived illegal aliens. The other elements of the offense are not contested.

Affirmed.

ELY, Circuit Judge (concurring):

I reluctantly concur in the result reached by the majority. Under the compulsion of our decisions,[1] I have no choice save to agree that the trial judge did not abuse his discretion in admitting evidence of the September 1978 incident when appellant was apprehended by immigration agents after he stopped and called out to nine illegal aliens hiding inside a culvert that was apparently marked. I have greater difficulty, however, with the admission into evidence of the July 1977 incident when appellant was arrested, although never prosecuted, for having driven an automobile away from a tavern near the Mexican border with several riders picked up at the bar who turned out to be illegal aliens. This earlier incident, it seems to me, as readily supports an inference of innocent behavior as it does of culpable conduct. This being so, were it not for our court's prior decision in *United States v. Holley,* 493 F.2d 581, 584 (9th Cir.), *cert. denied,* 419 U.S. 861, 95 S.Ct. 112, 42 L.Ed.2d 96 (1974), I would conclude that the prosecution failed to demonstrate, "clearly and convincingly," that appellant had knowingly transported illegal aliens on July 30, 1977.

I reiterate one paragraph of the majority's opinion. That paragraph reads:

"The fact that, in each of the instances of prior arrest, the government did not prosecute, weakens the probative value of those incidents. So does the tendency of juries to give excessive weight to such prior arrests, or to use them to characterize a defendant unfairly. I Wigmore, Evidence (3d Ed. 1940) § 194."

To me, the foregoing language indicates a belief on the part of my Brothers, a belief which I thoroughly share, that the admission of evidence of prior acts under Fed.R. Evid. 404(b) is so fraught with potential unfairness that our trial judges should rigidly require the prosecution to establish the three elements of the three-part test that must be met before evidence of prior

acts can be received. *See United States v. Brashier,* 548 F.2d 1315, 1325 (9th Cir. 1976), *cert. denied,* 429 U.S. 1111, 97 S.Ct. 1149, 51 L.Ed.2d 565 (1977); *see also United States v. Davis,* 551 F.2d 233, 234–35 (8th Cir.), *cert. denied,* 431 U.S. 923, 97 S.Ct. 2197, 53 L.Ed.2d 237 (1977).

1. *United States v. Espinoza,* 578 F.2d 224 (9th Cir.), *cert. denied sub nom. Oropeza-Briones v. United States,* 439 U.S. 849, 99 S.Ct. 151, 58 L.Ed.2d 151 (1978); *United States v. Holley,* 493 F.2d 581, 584 (9th Cir.), *cert. denied,* 419 U.S. 861, 95 S.Ct. 112, 42 L.Ed.2d 96 (1974).