**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 24-386 |
| *Plaintiff - Appellee*, | D.C. No. 3:23-cr-01331-GPC-1 |
| v. | |
| ALEX RUIZ, | AMENDED OPINION |
| *Defendant - Appellant*. | |

Appeal from the United States District Court
for the Southern District of California
Gonzalo P. Curiel, District Judge, Presiding

Argued and Submitted October 21, 2025
Pasadena, California

Filed January 7, 2026
Amended February 20, 2026

Before: Ryan D. Nelson and Lawrence VanDyke, Circuit
Judges, and Douglas Russell Cole, District Judge.[*]

Opinion by Judge Cole

---

[*] The Honorable Douglas Russell Cole, United States District Judge for
the Southern District of Ohio, sitting by designation.

# SUMMARY[**]

## Criminal Law

The panel affirmed Alex Ruiz's conviction for transporting illegal aliens in violation of 8 U.S.C. § 1324, in a case in which Ruiz argued that the district court abused its discretion in admitting into evidence a previous conviction he received for the same crime.

The panel held that the district court did not abuse its discretion in admitting the prior conviction under Fed. R. Evid. 404(b), as that conviction satisfied each prong of the test for admission: it tended to prove the material point of knowledge; two years is not too remote in time; the stipulation and redacted documents provided sufficient evidence of the prior bad act; and, to the extent similarity is needed, the prior crime was sufficiently similar to the offense charged.

Noting that the record shows that the district court implicitly considered the balancing test required by Fed. R. Evid. 403, the panel held that the district court did not abuse its discretion in performing this balancing and that any resulting prejudice did not substantially outweigh the probative value of the prior conviction.

Because Ruiz did not raise in the district court his arguments that admitting the prior conviction violated both due process and the Sixth Amendment, the panel reviewed

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

the constitutional challenge for plain error, which Ruiz did not show.

---

**COUNSEL**

Peter Horn (argued), Eric Olah, and Shivanjali A. Sewak, Assistant United States Attorneys; Daniel E. Zipp, Assistant United States Attorney, Chief, Appellate Section, Criminal Division; Adam Gordon, United States Attorney; Office of the United States Attorney, United States Department of Justice, San Diego, California; for Plaintiff-Appellee.

Benjamin P. Lechman (argued), Law Offices of Benjamin P. Lechman Esq., Los Angeles, California, for Defendant-Appellant.

---

**OPINION**

COLE, District Judge:

Defendant-Appellant Alex Ruiz appeals, on evidentiary grounds, his conviction for transporting illegal aliens in violation of 8 U.S.C. § 1324. Specifically, he argues that the district court abused its discretion in admitting into evidence at his current trial a previous conviction he received for that same crime. According to Ruiz, doing so violated both Federal Rule of Evidence 404(b) and the Constitution. Neither argument works. Because evidence of the prior conviction satisfies this court's four-part test for admissibility under Rule 404(b), the district court did not

abuse its discretion in admitting it. And Ruiz forfeited his constitutional argument by failing to present it below, so we review that issue for plain error, which Ruiz cannot show. Thus, we affirm the district court.

## I.  Background

On June 10, 2023, Border Patrol Agents Ordoñez-Nuñez and Guzman were driving in separate unmarked vehicles along State Route (SR) 94 around Campo, California, less than two miles from the United States-Mexico border. The agents noticed an older, white Honda Civic driving ten miles below the speed limit and weaving "in and out of lanes" along the highway. Agent Ordoñez-Nuñez grew suspicious of the vehicle because the driver and passenger kept looking at him through the window and side mirror, and the car was "sitting very low on the rear axle" as if it carried extra weight in the back seat or trunk. After following the Civic for 15–20 minutes, Agent Ordoñez-Nuñez ran a records check on it—the search included the vehicle's travel patterns, whether it had gone through any immigration checkpoints, and where it was registered. He learned the car was registered in La Mesa, over fifty miles away, and had no history of traveling in the area or through any checkpoints. Based on these results, the agent "requested for a marked Border Patrol unit to initiate a vehicle stop."

Shortly after, Agent Mallon drove up in a marked car, turned on the car's lights and sirens, and attempted to pull over the Civic. The car, however, did not stop; rather, it continued at the same speed down the road. At that point, the agents decided to deploy a vehicle immobilization device, otherwise known as a spike strip. But the Civic swerved around it. After that, a supervisor instructed the agents other than Agent Guzman, who had not turned on his

lights or siren, to discontinue their pursuit.  But, while Agent Guzman continued following the Civic, he soon lost sight of it for "approximately a minute or two."  When he next saw the car, the Civic was "pulling back onto the road . . . two tires on pavement, two tires on dirt," and four people were ten or fifteen yards off the roadway, running away.  Agent Guzman immediately reported a "bailout" on his radio.

A few minutes later, officers deployed a second spike strip.  This time, the Civic hit it and soon came to a stop.  Agents approached the vehicle and arrested Ruiz.

Agent Mallon, meanwhile, searched the area where the "bailout" occurred and found shoe prints.  The shoe prints led him 50 yards away from the highway to a tree in which four people were hiding.  The four individuals were not U.S. citizens and did not have valid immigration documents, so Agent Mallon arrested all of them.

## II. Procedural History

The government charged Ruiz with three counts of Transportation of Certain Aliens and Aiding and Abetting, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (v)(II).[1]  To convict on the transportation charge, the government needed to prove: (1) the individuals named in the information were aliens, (2) those individuals were not lawfully in the United States, (3) "the defendant knew or acted in reckless disregard of the fact that the person specified in the count was not lawfully in the United States," and (4) "the defendant knowingly transported or moved the person specified in the count to help him remain in the United States illegally."  The

---

[1] Ruiz was charged with one count for each person who was traveling in his car.  Jose Manuel Gomez Perez, the fourth person in his car, was charged as a co-defendant, so he was not included as one of the counts.

parties stipulated that the three people named in the
information were aliens in the United States illegally,
satisfying the first two elements.  The government's burden
at trial thus boiled down to proving Ruiz had the requisite
knowledge as to both prongs three and four.[2]

### A.  Ruiz's Prior Conviction

Ruiz had pleaded guilty in an earlier case to transporting
an alien in violation of 8 U.S.C. § 1324, although supposedly
under a different subsection.[3]  That charge arose from Ruiz
driving two minor females through a California port of entry
and using false documents in early 2022.  He pleaded guilty
to the offense on August 19, 2022.

In the run-up to the trial, the government indicated its
intent to introduce the earlier conviction, so Ruiz moved in
limine to preclude that.  But at a pre-trial hearing on the
motions in limine, the district court ruled the conviction
could come in under Federal Rule of Evidence 404(b) "to the
extent that it would support the idea that Mr. Ruiz had

---

[2] Ruiz argues that the "only issue in dispute" was whether it was his Civic
(as opposed to some other white car also traveling down the road at that
same time) that was transporting the individuals.  But while the defense
limited its arguments to that issue, the government still had to prove
Ruiz's knowledge, which is an element of the offense; therefore,
knowledge was also at issue.  *United States v. Ramirez-Jiminez*, 967 F.2d
1321, 1325–26 (9th Cir. 1992).  Defendant's counsel acknowledged this
at the motion in limine hearing, where he stated, "This is a straight-up
knowledge and intent case."

[3] Defendant's counsel stated at the motion in limine hearing that the two
offenses required different elements as they are different subsections of
§ 1324.  The appellate brief, however, states that Ruiz was convicted of
8 U.S.C. § 1324(a)(1)(A)(ii) in the current case, and that he pleaded
guilty to a violation of 8 U.S.C. § 1324(a)(1)(A)(ii).  Thus, the offenses
were for violations of the same subsection requiring the same elements.

knowledge that the individuals that he was transporting were indeed undocumented individuals and that he had engaged in a plan to transport them within the United States."**⁴**  Based on that ruling, the parties agreed to redact certain prejudicial facts, such as that the prior case involved female minors and false documents.

During the trial itself, the government raised the prior conviction several times, which the court almost always immediately followed with a limiting instruction.  The government first mentioned it in its opening argument, at which time the district court instructed the jury that the conviction could bear on "questions of knowledge and motive," but that the jury should not consider it as evidence that the defendant has a bad character or propensity to commit crimes.  Next, on day two, the government read into evidence a stipulation that Ruiz had pleaded guilty to transporting an alien in 2022.  In connection with reading that stipulation, the government also introduced and published redacted copies of Ruiz's plea agreement, the transcript of the change of plea hearing, and the judgment. Once again, the district court gave a long limiting instruction to only consider the prior conviction to decide: "one, whether the defendant had the knowledge or intent necessary to commit the crimes charged in the information in this case; and, two, whether the defendant did not commit the acts for which he is on trial by accident or by mistake."  The government also published the above-mentioned documents to the jury during Agent Guzman's testimony.

At the close of trial, the district court again instructed the jury to only consider the prior conviction for questions of

---

⁴ The district court also admitted the prior conviction under FRE 609, but this is irrelevant because Ruiz did not testify.

"the defendant's intent, knowledge, absence of mistake, or absence of accident and for no other purpose." He specifically instructed the jury that it "may not consider this evidence as evidence of guilt of the crime for which the defendant is now on trial." In its closing, the government highlighted how the prior conviction showed a lack of mistake or accident. The defense, by contrast, argued that there are "important differences" between the prior and instant case, and that it can only be used for limited purposes, but "there's really only one reason that that is in evidence"—i.e., the government wanted the jury to use it for illicit propensity purposes to conclude Ruiz was guilty of once again engaging in the same type of conduct. Beyond that, the district court elected not to allow the redacted documents to go back with the jury during deliberations in order to limit any "undue emphasis."

### B.  The Government's Other Evidence at Trial

Apart from the prior conviction, the government presented substantial evidence about Ruiz's conduct that formed the basis for the current charges. Agents Ordoñez-Nuñez, Haynes, Mallon, and Guzman all testified. Three of the four identified Ruiz as the vehicle driver. The jury also watched body-worn camera footage and saw portions of the second spike strip, the Civic coming to a rest, and the driver (Ruiz) exiting the car. It also saw screenshots from Agent Mallon's body-worn camera depicting the four people in the tree.

Perhaps the "star witness" was Jose Manuel Gomez Perez, one of the individuals in the car and Ruiz's one-time co-defendant. Gomez had pleaded guilty the week before Ruiz's trial. Gomez testified at Ruiz's trial that Gomez was a foot guide for the group, leading them from Mexico into

the United States. Gomez further testified that he used WhatsApp to coordinate with others the group's entry into the United States. In that regard, he testified he was instructed to wait for what he described as a "white car" and a "Honda" to pick up the group. While Gomez could not identify the driver, he testified that the driver: (1) called Gomez by his nickname, "Chiapas"; (2) told the group to bend down in the vehicle because they were getting caught; and (3) finally told them to "get out" on the side of the road before they hid in the tree. The government argued that these statements showed that the Honda driver (who the government argued was Ruiz) did not randomly pick up passengers along the road, but instead had been sent to collect the specific group of illegal aliens and transport them further into the United States.

Agent Guzman also testified that another member of the group, Miguel, sent his coordinates in the WhatsApp group text conversation referenced above. The government then introduced into evidence a map showing that these coordinates were not far from where Border Patrol agents started following Ruiz and finally stopped him.

The defense did not offer any evidence.

After closings, the jury began deliberating at 1:00 pm. It returned a verdict at 2:17 p.m. The jury convicted Ruiz on all three counts. The district court sentenced Ruiz to thirty-three months of imprisonment and three years of supervised release.

## STANDARD OF REVIEW

We review *de novo* whether the challenged evidence falls within the scope of "other crimes" evidence for Rule 404(b) purposes. *United States v. Soliman*, 813 F.2d 277,

278 (9th Cir. 1987). If the evidence does not fall within that scope (e.g., if the alleged "other crime" is "inextricably intertwined" with the current charge such that it is not really a separate offense), the analysis ends, and Rule 404(b) does not prevent admission. *Id.* at 279. If, on the other hand, the evidence is properly characterized as "other crimes" evidence, then we review for abuse of discretion the district court's decision to admit the evidence under Rule 404(b)(2). *United States v. Ramirez-Robles*, 386 F.3d 1234, 1242 (9th Cir. 2004).

If Rule 404(b) does not preclude admission, we separately consider, under Rule 403, whether any unfair prejudice arising from admitting the evidence substantially outweighs its probative value. *United States v. Chea*, 231 F.3d 531, 534 (9th Cir. 2000). We review that determination for abuse of discretion. *United States v. Flores-Blanco*, 623 F.3d 912, 919 (9th Cir. 2010).

## ANALYSIS

## I. Rule 404(b) did not bar admission of Ruiz's prior conviction.

Rule 404(b) prohibits using evidence of a previous crime "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Such evidence is admissible, however, to prove "another purpose," including "motive, opportunity, *intent*, preparation, plan, *knowledge*, identity, *absence of mistake,* or *lack of accident*." Fed. R. Evid. 404(b)(2) (emphases added). We have developed a four-part test to decide when a prior bad act is admissible: "(1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the

other act; and (4) (in certain cases) the act is similar to the offense charged." *United States v. Romero*, 282 F.3d 683, 688 (9th Cir. 2002). The prior conviction satisfies all four prongs.

## A. The prior conviction proved a material point.

The first element of the four-part test to determine admissibility asks whether "the evidence tends to prove a material point." *Id.* To convict Ruiz, the government needed to prove that he knew the individuals at issue were not lawfully in the United States, and that he knowingly transported them to help them remain in the United States illegally. 8 U.S.C. § 1324(a)(1)(A)(ii); *see supra* Procedural History. Thus, Ruiz's knowledge was a material element the government needed to prove. *Ramirez-Jiminez*, 967 F.2d at 1325–26.

We have repeatedly affirmed using prior stops, arrests, and convictions for transporting aliens to help show the same defendant's knowledge in later cases. *See, e.g.*, *United States v. Holley*, 493 F.2d 581, 584 (9th Cir. 1974) (prior stop was relevant because "knowledge was a critical issue"); *United States v. Espinoza*, 578 F.2d 224, 227–28 (9th Cir. 1978) (prior act and pending charges were admissible where "central issue . . . was the knowledge and intent"); *United States v. Winn*, 767 F.2d 527, 529–30 (9th Cir. 1985) (prior conviction "shows that appellant had knowledge of the smuggling operation"); *Flores-Blanco*, 623 F.3d at 919 n.4 (testimony of prior involvement tended to prove knowledge, intent, and plan).

*United States v. Longoria* is particularly instructive. 624 F.2d 66, 68–69 (9th Cir. 1980). There, Border Patrol agents followed a taxicab driver, Longoria, near the Mexican border when he appeared to have illegal aliens in his car. *Id.* at 68.

Agents then stopped and arrested Longoria. *Id.* At trial, the central issue was whether Longoria knew the people in his cab were illegal aliens. To prove that element, the government introduced evidence of a prior conviction for transporting illegal aliens, in which Longoria had likewise driven aliens from the border to a motel. *Id.* at 68–69. Much like here, Longoria appealed, challenging the trial court's admission of that prior conviction on Rule 404(b) grounds. *Id.* at 69. But we rejected that argument, holding that "evidence of a prior similar offense is highly relevant and admissible to show the requisite knowledge, criminal intent, and lack of innocent purpose." *Id.*

Just as in *Longoria*, the main element the government needed to prove at trial here was whether Ruiz *knew* he was transporting illegal aliens. The district court admitted the prior conviction to prove such knowledge, a material element. *See Holley*, 493 F.2d at 584; *Longoria*, 624 F.2d at 69.

The government in its closing argument also argued that the prior conviction proved a lack of accident or mistake. That is a permissible purpose, as well. Under *Longoria*, the government can use prior convictions to prove "lack of innocent purpose." 624 F.2d at 69. Specifically, the evidence provided a basis for the jury to conclude that Ruiz was not involved by mistake.

At bottom, the government needed to show that Ruiz was not a random driver who happened to pick up hitchhikers who happened to be illegal aliens. The prior conviction tended to prove that material fact.

**B. The prior conviction was not too remote in time.**

The second element to determine admissibility of prior bad acts is whether the alleged bad act is too remote in time. *Romero*, 282 F.3d at 688. Here, the earlier illegal conduct—transporting aliens—occurred in February 2022, and Ruiz was convicted of that crime on August 19, 2022. His conviction for the instant offense, meanwhile, occurred on October 18, 2023, so the complete timeline is less than two years. That falls well within durations we have approved. *United States v. Spillone*, 879 F.2d 514, 519 (9th Cir. 1989) (affirming admission of conviction from more than ten years before trial); *United States v. Johnson*, 132 F.3d 1279, 1283 (9th Cir. 1997) (finding prior bad acts from thirteen years before were admissible).

**C. There is sufficient evidence that the prior crime occurred.**

The third element is whether there is sufficient evidence that the earlier bad act actually happened. *Romero*, 282 F.3d at 688. This prong imposes a "low threshold." *Id*. This court has held that a defendant's conviction for the prior offense more than satisfies it. *United States v. Arambula-Ruiz*, 987 F.2d 599, 603 (9th Cir. 1993) ("[T]he fact that [the defendant] was convicted of the prior drug offense is sufficient proof that the defendant committed the prior act."). Not only was Ruiz convicted of the offense of transporting aliens, but he stipulated that he had pleaded guilty to it. In other words, he *admitted* he had committed the crime. That easily satisfies the third prong.

**D. To the extent similarity is needed, the prior conviction is similar to the offense charged.**

The fourth element asks whether the prior bad act is sufficiently similar to the instant offense, but this element only applies "in certain cases." *Romero*, 282 F.3d at 688. For example, a prior conviction need not be a similar offense if offered to prove knowledge, "as long as the prior act was one which would tend to make the existence of the defendant's knowledge more probable than it would be without the evidence." *Ramirez-Jiminez*, 967 F.2d at 1326; *but see United States v. Mayans*, 17 F.3d 1174, 1181 (9th Cir. 1994) (stating the last element of the four-part test as "(4) (in cases where knowledge and intent are at issue) the act is similar to the offense charged" (citation omitted)). By contrast, if the evidence is offered to prove "identity, *modus operandi*, or absence of mistake or accident," then similarity is required. *Ramirez-Jiminez*, 967 F.2d at 1326 (quoting *United States v. Bailleaux*, 685 F.2d 1105, 1110 n.1 (9th Cir. 1982)). "The reason for this is that similarity, like proximity in time, is not a prerequisite having independent force, but rather a factor pertinent to rational appraisal of the probative value of the evidence in relation to the purpose for which it is being offered." *Id.*

Here, the district court initially admitted the evidence "to the extent that it would support the idea that Mr. Ruiz had *knowledge* that the individuals he was transporting were indeed undocumented individuals," an account on which similarity is perhaps not required. At trial though, the purposes expanded to include motive, intent, and lack of accident or mistake, which can impose a similarity requirement.

Ultimately, though, it matters little whether this prong applies, as it is satisfied.  But why that is so merits some additional explanation.  At a high level, of course, both this case and the earlier conviction involve transporting illegal aliens in violation of § 1324, with Ruiz acting as the driver in Southern California.  So on that telling, they seem similar. But viewed with more granularity, differences emerge.  For example, Ruiz was apprehended at different places; in the earlier case, he was arrested at a California port of entry, while here agents stopped him on a rural road several miles into the United States.  And the nature of the offense was arguably different.  Before he had transported two female minors and did not attempt to conceal them, instead he attempted to use false documents.  Here, he concealed four adult men and told them to "get out" after Border Patrol first attempted to stop him.[5]

So it matters how we go about assessing similarity.  One approach this court has used in answering that question is to compare the magnitude of the differences in the crimes in the current case to the differences that this court has approved as "similar" in past cases.  *See, e.g.*, *United States v. Herrera-Medina*, 609 F.2d 376, 380 (9th Cir. 1979) (finding that the prior arrests and offense charged there were sufficiently similar because they were more similar than the prior acts at issue in *Espinoza* and *Holley*, cases in which this court had upheld admissibility of prior bad acts evidence). Applying that framework, Ruiz's current crime and his past conviction are similar.

---

[5] Defense counsel also argued below that another difference is that Ruiz pleaded guilty in the prior case and was "willing to admit where he's wrong," but in this case, he did not.  But this is not a difference in the circumstances of the offense or factual basis for his arrest in that case.

For example, in *Holley*, we upheld admission of Holley's prior arrest for transporting illegal aliens to prove Holley's knowledge that his taxicab passengers in the current case were illegal aliens. 493 F.2d at 584. In both cases, Holley was the driver, but, much like here, the specific details varied—"the number, age, sex, and attire" of the aliens was different. *Id.* at 585 (Hufstedler, J., dissenting). Further, in the earlier case, Holley picked up the couple near his garage in his private car. *Id.* But in the later case, he picked up four men in his taxicab after receiving a radio call from the company dispatcher. *Id.* Despite these differences, we held that the district court did not abuse its discretion in admitting the prior arrest as "prior similar conduct." *Id.* at 584.

Similarly, in *Espinoza*, we upheld admission of Border Patrol agents' testimony about their previous surveillance of the defendants before the arrest leading to the case at trial. 578 F.2d at 226–28. Earlier, Border Patrol agents had observed the defendants in their truck pull next to a van, and that van was later found with 27 aliens inside. *Id.* at 226–27. The conduct at issue at trial, by contrast, involved an illegal alien calling one defendant, that defendant picking him up from a gas station, driving him to the defendant's house, and the other defendant arriving at the house and picking up the illegal alien, where Border Patrol agents then stopped them. *Id.* As we described in a later case, "the defendants in [*Espinoza*] had not, in the prior incident, picked up illegal aliens. The most that a jury could have inferred was that they had arranged to have another person pick up the aliens." *Herrera-Medina*, 609 F.2d at 380. Despite these differences, we found the acts sufficiently similar to allow admission under Rule 404(b). *Espinoza*, 578 F.2d at 228.

The details here are *more* similar than in *Espinoza*. There, as noted, the defendants had been the drivers one

time, but only arranged a pick-up the other. 578 F.2d at 226–28. Here, Ruiz acted as the driver in both the cases. True, the number, sex, and age of the immigrants differed, but *Holley* rejected the idea that this prevents a finding of similarity. 493 F.2d at 585 (Hufstedler, J., dissenting). Further, both offenses occurred in the same region along the border in Southern California. Thus, the prior conviction is sufficiently similar to the instant offense to support admissibility.

In sum, the prior conviction satisfies each prong of the test for Rule 404(b)—it tended to prove the material point of knowledge, two years is not too remote in time, the stipulation and redacted documents provided sufficient evidence of the prior bad act, and the prior crime was sufficiently similar to the offense charged. Therefore, the district court did not abuse its discretion in admitting the prior conviction under Rule 404(b).

The Defendant urges a different result, arguing that the prior conviction was inadmissible for failure to meet the third prong of the Rule 404(b) test—whether there was sufficient evidence the prior bad act had occurred. *See United States v. Bailey*, 696 F.3d 794, 799 (9th Cir. 2012); *United States v. Wells*, 879 F.3d 900, 914 (9th Cir. 2018). It is true that, in *Bailey*, we held that the district court had erred in admitting a prior civil SEC complaint in a later action as evidence that the prior offense had occurred. 696 F.3d at 799. Specifically, we held that when the sole evidence that a prior bad act occurred is a complaint, that does not satisfy the third prong of the admissibility test. But that is because a complaint includes only *allegations*, not proof. *Id.* Here, by contrast, Ruiz pleaded guilty to, and was convicted of, the prior offense. That more than suffices to show the offense occurred.

Ruiz's brief does not even meaningfully argue otherwise. While Ruiz characterizes his challenge as directed at the third element, Ruiz, based on *Bailey*, really contests the similarity element—prong four. As he puts it in his brief, "the bare fact of a prior § 1324 conviction does not establish that he committed an act *like the one charged here*." (Emphasis added). That fails for the above-noted reasons relating to prong four.

*Wells* does not help him either. 879 F.3d 900. There, the district court first admitted expert testimony regarding a criminal "profile," and the government then argued the defendant's characteristics fit that profile. *Id.* at 914. But the use of "profile" testimony raises questions under Rule 404(a)(1), so the analysis on that front is entirely irrelevant to the Rule 404(b) challenge here. *Id.* at 920–21. To be sure, the district court also had admitted various other prior bad acts that formed the basis for the profile testimony, which did bring Rule 404(b) into play. But much of the analysis of that issue was limited to whether the evidence was even subject to Rule 404(b) in light of the inextricably intertwined exception. *Id.* at 925. The scope of that exception is irrelevant here, though, as no party raised, nor did the district court rely on, this exception in determining admissibility. And beyond that, *Wells* affirmed *admitting* most of the prior bad acts, except for one conviction, to prove motive under Rule 404(b). *Id.* at 929. Specifically, the government used the prior bad acts to explain *why* the defendant wanted to murder his coworkers—i.e., classic motive evidence. *Id.* Here, by contrast, while the district court mentioned the prior conviction could be used to prove "knowledge and motive," the government did not use Ruiz's conviction to argue motive, but only to argue that he knew that the individuals

were in the United States illegally.  Therefore, *Wells* is not instructive here.

In sum, the district court did not abuse its discretion in admitting the prior conviction under Rule 404(b).

## II. Ruiz's prior conviction should not be excluded under Rule 403.

Because there was no error under Rule 404(b), we must consider whether admitting the prior conviction complies with Rule 403's balancing test.  "If the evidence meets [the four-part] test under Rule 404(b), 'the [district] court must then decide whether the probative value is substantially outweighed by the prejudicial impact under Rule 403.'" *Chea*, 231 F.3d at 534 (quoting *United States v. Nelson*, 173 F.3d 1094, 1107 (9th Cir. 1998)).  But, even if a district court does not explicitly mention Rule 403, we "will uphold admission of the evidence when it is clear from the record that the court implicitly made the necessary finding." *Ramirez-Jiminez*, 967 F.2d at 1326.

The record shows that the district court implicitly considered the balancing question.  At the motion in limine hearing, Ruiz argued that certain facts about the prior conviction (i.e., that it involved minor females and false documents) were overly prejudicial and, at minimum, needed to be redacted.  The district court agreed that those facts would be overly prejudicial and "wouldn't move the ball up the field," so the prior conviction should be "sanitized."  The government agreed to redact the documents.  Additionally, the district court did not allow testimony from the agent involved in the prior conviction because it would be unnecessary on top of the guilty plea and other documents.  Furthermore, the district court did not let the documents go back with the jury along with the other

exhibits because it would give "undue emphasis" to the conviction. Taken together, this conduct shows that, even though the district court may not have explicitly mentioned Rule 403, it weighed the probative value and unfair prejudice in deciding how to allow the government to introduce the evidence.

Relatedly, the district court did not abuse its discretion in performing this balancing. Rule 403 directs the court to exclude evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. Specifically, the prejudice must be *unfair*, meaning it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). The probative value in a knowledge case, on the other hand, is "measured by its tendency to make the existence of [Ruiz's] knowledge or intent more probable than it would be without the evidence." *Ramirez-Jiminez*, 967 F.2d at 1327.

Ruiz's prior conviction for transporting illegal aliens makes it more probable that he had knowledge that the individuals in his car were present illegally and that he knowingly transported them to help them remain in the United States. This prior conviction is unlikely to create an emotional or otherwise unfairly prejudicial response, especially since the parties redacted the facts concerning female minors and false birth certificates. "Rather, it is prejudicial only to the extent that it tends to prove the fact justifying its admission, namely that appellant had knowledge of his cargo of illegal aliens." *Id.* In other words, it is *fairly*, not unfairly, prejudicial. Beyond that, the district court gave repeated limiting instructions about the proper purpose of the prior conviction each time the government

raised it, further minimizing any risk of unfair prejudice. *Flores-Blanco*, 623 F.3d at 920. Accordingly, we hold that any risk of unfair prejudice did not substantially outweigh the probative value of the prior conviction, meaning the district court did not abuse its discretion at this step in admitting the prior conviction.

## III. Ruiz did not raise the constitutional question in the lower court, so we review for plain error, which Ruiz has not shown.

Separately, Ruiz argues that admitting the prior conviction violated both due process and his Sixth Amendment right to a fair trial. Ruiz, however, did not raise these constitutional issues below. Accordingly, we review for plain error. *See United States v. Perez*, 116 F.3d 840, 846 (9th Cir. 1997) (en banc); *United States v. Depue*, 912 F.3d 1227, 1232 (9th Circ. 2019) (en banc).

Ruiz has not shown that the district court plainly erred under either the due process clause or the Sixth Amendment in admitting the prior acts evidence. He only argues that a court violates those constitutional provisions by admitting such evidence purely for propensity purposes. As he states it, "propensity evidence is constitutionally inadmissible." And he acknowledges that the Supreme Court has twice held that admission of prior acts evidence does not violate due process where it is not offered as general propensity evidence. *See Dowling v. United States*, 493 U.S. 342, 353–54 (1990) (no due process violation where evidence "was at least circumstantially valuable in proving petitioner's guilt" for reasons apart from propensity); *Spencer v. Tex.*, 385 U.S. 554, 556 (1967) (upholding habitual offender statute that required state to introduce proof of prior conviction to establish enhancement, subject to limiting instruction that

"such matters were not to be taken into account in assessing the defendant's guilt or innocence under the current indictment").

As described above, the United States did not rely on the prior acts evidence as propensity evidence. Rather, it used the evidence to prove Ruiz's knowledge. Moreover, as noted, the probative value of the evidence in establishing that knowledge was not substantially outweighed by any unfair prejudice.

In sum, the factual predicate for Ruiz's argument (that the evidence came in solely for propensity purposes) is wrong. Accordingly, Ruiz fails to establish that the trial court committed constitutional plain error in admitting that evidence. And, because the evidence was not admitted for propensity purposes, we need not, and thus do not, decide whether admitting evidence purely for such purposes would violate the Constitution. *See Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 348 (2022) (Roberts, C.J., concurring) ("If it is not necessary to decide more to dispose of a case, then it is necessary *not* to decide more." (emphasis original)).

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.